[No. B195034. Second Dist., Div. Four. Sept. 3, 2008.]

CHRISTOPHER McMILLIAN, a Minor, etc., et al., Plaintiffs and Appellants, v.
CASSANDRA M. STROUD et al., Defendants;
STATE DEPARTMENT OF HEALTH CARE SERVICES, Claimant and Respondent.

## COUNSEL

Law Offices of Peter B. O'Brien and Peter B. O'Brien for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Richard T. Waldow and Ernest Martinez, Deputy Attorneys General, for Claimant and Respondent.

## OPINION

**MANELLA, Acting P. J.**—Appellant Christopher McMillian, through his guardian ad item, Marguerite McMillian, challenges the probate court's order directing him to pay a lien issued by respondent State Department of Health Care Services (Department or respondent) under the Medi-Cal California Medical Assistance Program (Medi-Cal) (Welf. & Inst. Code, § 14000 et seq.).[1] We affirm.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Christopher McMillian, who was born in 1990, contracted meningococcal meningitis, and has been totally disabled since February 1, 2001. Marguerite McMillian, his grandmother, is the trustee of a special needs trust established for his benefit in 2001 (Prob. Code, § 3600 et seq.).[2] In January 2002, he initiated an action for professional negligence against several physicians and private medical facilities. Marguerite McMillian and Sandra Mestas, his mother, also asserted claims for medical negligence and loss of consortium in the action. The plaintiffs in the action were represented by Attorneys Thomas V. Girardi of Girardi & Keese and Delores A. Yarnall of Binder & Norris.

---

[1] All further statutory citations are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Generally, a special needs trust is intended to "allow[] the beneficiary to maintain eligibility for certain needs-based government benefits, such as Medi-Cal." (*Shewry v. Arnold* (2004) 125 Cal.App.4th 186, 191 [22 Cal.Rptr.3d 488].)

On January 13, 2004, appellants and Mestas filed a petition for approval of a proposed settlement of the action. Under the settlement, Christopher McMillian, Marguerite McMillian and Mestas were to receive, respectively, $2.3 million, $110,000, and $90,000. The settlement included $400,079.42 in attorney fees, to be shared equally by Girardi & Keese and Binder & Norris. No amount of the settlement was expressly allocated as compensation for Christopher McMillian's past medical expenses, which were described as "[i]n excess of $250,000." Regarding these expenses, the petition stated: "All medical bills were paid by the Guardian's private medical insurance." The petition also stated that notice of the action had not been submitted to the State of California pursuant to section 14124.73, with the following explanation: "The minor child's medical bills were paid by private insurance. Thus, no notice to the government was required. [¶] The private insurers have no reimbursement under the MICRA statute." In approving the settlement on January 23, 2004, the trial court in the action found that "[t]here were no liens as private insurance paid medical expenses."

On October 14, 2005, appellants and Mestas, represented by Attorney Peter B. O'Brien, filed petitions to establish a litigation special needs trust for Christopher McMillian, and to modify the special needs trust created in 2001. The petitions asserted that the instrument creating the special needs trust failed to address an existing Medi-Cal lien, and requested an order approving settlement or payment of the lien. The petitions argued that the payment of the lien was a prerequisite to the establishment of the litigation special needs trust. In support of the petitions, Marguerite McMillian submitted a declaration that stated: "The money owed to Medi-Cal is to be determined; I have been informed via letter from litigation counsel that it is approximately $105,429.54. . . . My present attorney . . . will attempt to negotiate the lien down . . . . [¶] I also request approval of payment of the Medi-Cal lien . . . ."

On May 3, 2006, appellants and Mestas filed a motion to reduce the Medi-Cal lien, arguing that respondent could recover no more than $623.75, in view of *Arkansas Dept. of Health and Human Servs. v. Ahlborn* (2006) 547 U.S. 268 [164 L.Ed.2d 459, 126 S.Ct. 1752] (*Ahlborn*). In opposing the motion, respondent asserted that Christopher McMillian had received $111,783.24 in Medi-Cal benefits, that following statutory reductions the lien amounted to $83,837.43, and that *Ahlborn* mandated no further adjustments in the lien.[3] On September 13, 2006, the probate court denied the motion and

---

[3] The amount of the lien was reduced to $83,837.43 under subdivision (d) of section 14124.72, which provides: "Where the action or claim is brought by the beneficiary alone and the beneficiary incurs a personal liability to pay attorney's fees and costs of litigation, [respondent's] claim for reimbursement of the benefits provided to the beneficiary shall be limited to the reasonable value of benefits provided to the beneficiary under the Medi-Cal

ordered Christopher McMillian to satisfy the lien in the amount of $83,837.43. This appeal followed.[4]

## DISCUSSION

Appellant contends that the probate court erred in ordering Christopher McMillian to pay the Medi-Cal lien. We disagree.

### A. *Governing Principles*

Medi-Cal was created to obtain funding available to the states under the provisions of the federal Social Security Act creating the Medicaid program (42 U.S.C. § 1396 et seq.). (*California Medical Assn. v. Brian* (1973) 30 Cal.App.3d 637, 642 [106 Cal.Rptr. 555]; see *Brown v. Stewart* (1982) 129 Cal.App.3d 331, 340–341 [181 Cal.Rptr. 112].) Under these provisions, states participating in the Medicaid program are obliged to seek reimbursement from third parties legally liable for the medical expenses of individuals who receive benefits implicating Medicaid funds. (*Brown*, at p. 341; 42 U.S.C. § 1396a(a)(25).) California enacted the Medi-Cal program in compliance with this mandate. (*Brown v. Stewart, supra*, 129 Cal.App.3d at p. 341.)

In *Kizer v. Ortiz* (1990) 219 Cal.App.3d 1055, 1058–1059 [268 Cal.Rptr. 666], the court described the pertinent provisions of the Medi-Cal program, as effective during the underlying proceedings: "Under the Medi-Cal program, the state makes payments to health care providers who render medical care and treatment to Medi-Cal beneficiaries. (§ 14000 et seq.) When health care services are provided because of an injury for which another person or entity is civilly liable, [respondent] has the right to recover from such person or entity the reasonable value of the services provided. (§ 14124.71.) When an action is brought by the beneficiary alone, [respondent] is allowed a first lien, of not more than one-half, on the proceeds, after payment of reasonable litigation expenses and attorney's fees. (§§ 14124.74, 14124.78.) [¶] If the Medi-Cal beneficiary brings an action against the third person believed to be civilly liable for the injuries, he or she *must* give notice to [respondent] within 30 days of filing the action. (§ 14124.73.) The law specifically describes how to give the required notice. (§ 14124.79.) [¶] Notice is again required if a settlement or judgment is received: 'No judgment, award, or settlement in any action or claim by a beneficiary to recover damages for injuries, where [respondent] has an interest, shall be

program less 25 percent which represents [respondent's] reasonable share of attorney's fees paid by the beneficiary and [a] portion of the cost of litigation expenses . . . ."

[4] The ruling is appealable as a final order of the probate court directing the payment of a debt. (Code Civ. Proc., § 904.1, subd. (a)(10); Prob. Code, § 1300, subd. (d).)

satisfied without first giving [respondent] notice and a reasonable opportunity to perfect and satisfy his lien.' (§ 14124.76.) Again, the law provides how notice is to be given. (§ 14124.79.)" (Fn. omitted.)[5]

▇ Under the Medi-Cal program, the benefits to a beneficiary are neither gifts nor gratuities (*Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635, 643, fn. 3 [246 Cal.Rptr. 192]), and respondent's right to reimbursement as lien claimant is independent of the beneficiary's rights against the third party tortfeasor. As the court explained in *Wright v. Department of Benefit Payments* (1979) 90 Cal.App.3d 446, 452–453 [153 Cal.Rptr. 474]: "[Respondent's] right is akin to that of [the beneficiary's] creditor to recover payment for a debt [the beneficiary] incurred when, having received injuries for which the tortfeasor might be liable, he accepted treatment for which Medi-Cal paid. [Citation.] Although [respondent's] actual recovery of payment for the debt is conditioned on the existence of a fund created from a judgment or settlement, [respondent's] right to recover is independent of [the beneficiary's] right—not derivative therefrom."

In *Ahlborn*, the United States Supreme Court held that federal law imposes an additional limit on a state's recovery from a judgment or settlement. There, an Arkansas college student was injured in a car accident, and received $215,645.30 in benefits from Arkansas's Medicaid plan. (*Ahlborn, supra*, 547 U.S. at pp. 272–274.) Under Arkansas law, the state agency administering the plan was authorized to assert a lien for the full amount of the benefits against any judgment or settlement the student might obtain in an action against the parties responsible for her injuries. (*Id.* at pp. 277–279.) After the student initiated an action, the state agency intervened and requested notice of hearings in the case. (*Id.* at p. 274.) No hearings occurred; instead, the parties entered into a settlement agreement that awarded the student $550,000, without allocating the funds to categories of damages. (*Ibid.*) The agency did not participate or ask to participate in the settlement discussions, and did not seek to reopen the judgment after the case was dismissed, but asserted a lien for $215,645.30. (*Ibid.*)

▇ When the student sought declaratory relief regarding the lien in federal district court, the parties stipulated that the student's entire claim was reasonably valued at $3,040,708.18, that the settlement was one-sixth of this amount, and that only $35,581.47 of the settlement funds constituted reimbursement for past medical payments. (*Ahlborn, supra*, 547 U.S. at pp. 272–274.) Following an examination of the federal "Medicaid" law, the United States Supreme Court determined that a state's recovery for benefits

---

[5] In 2007, sections 14124.76 and 14124.78 were amended to reflect the holding in *Ahlborn*, which we discuss below. (Stats. 2007, ch. 188, § 71.)

may not exceed the portion of a settlement that represents payments for medical care. (*Ahlborn*, at p. 292.) Relying on the stipulated facts before it, the court held that the Arkansas state agency could not assert a lien exceeding $35,581.47. (*Id.* at pp. 280–281, 292.)

Although the court recognized that its interpretation of federal law created a potential for "settlement manipulation," in view of the stipulations in the record, it declined to address this issue. (*Ahlborn, supra,* 547 U.S. at p. 288.) It nonetheless observed: "Even in the absence of such a postsettlement agreement, . . . the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." (*Ibid.*)

The key question before us is whether *Ahlborn* precluded the trial court from ordering Christopher McMillian to satisfy the full amount of the lien asserted against the settlement. Generally, "reimbursement of Medi-Cal payments in third party suits or claims permit no judicial discretion. The only discretion to waive all or part of the lien rests with [respondent's] director." (*Brown v. Stewart, supra,* 129 Cal.App.3d at p. 342; see *Kizer v. Ortiz, supra,* 219 Cal.App.3d at p. 1061.)[6] Because reimbursement is mandatory upon a proper showing of facts (see *Kizer v. Hirata* (1993) 20 Cal.App.4th 841, 844 [25 Cal.Rptr.2d 19]), we review the trial court's resolution of questions of law de novo (see *Home Depot, U.S.A., INC. v. Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1599 [49 Cal.Rptr.2d 302]), and otherwise examine the record for substantial evidence to support its factual determinations (see *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 561 [38 Cal.Rptr.2d 221]).

---

[6] Pointing to *Garcia v. County of Sacramento* (2002) 103 Cal.App.4th 67 [126 Cal.Rptr.2d 465] (*Garcia*), appellants contend the trial court had the discretion to reduce the lien. We disagree. In *Garcia*, the beneficiary of Medi-Cal benefits secured a judgment regarding his injuries against the County of Sacramento. (*Id.* at p. 71.) On appeal, the court addressed an apparent conflict between section 14124.74, which mandates the payment of Medi-Cal liens from judgments, and Government Code section 985, which permits the trial court to deny reimbursement for Medi-Cal liens from judgments against public entities to avoid "undue hardship" to the injured person. (*Garcia, supra,* 103 Cal.App.4th at pp. 72–77.) The court concluded that the latter statute takes precedence over the former in cases involving a judgment against a public entity. (*Id.* at pp. 77–78.) Because no public entity was named as a defendant in appellants' action for damages, *Garcia* is inapplicable here.

On a related matter, we also reject appellants' contention—advanced in conclusory terms— that *Ahlborn* barred respondent from asserting its lien as a "first lien" not exceeding one-half of the beneficiary's recovery, after adjustments for attorney fees, litigation costs, and medical payments by the beneficiary (§§ 14124.74, 14124.78). Respondent's $83,837.43 lien is far less than one-half of Christopher McMillian's adjusted recovery; moreover, as explained below (see pt. C., *post*), appellants have failed to show that the lien exceeds the limit imposed by *Ahlborn*, and have otherwise forfeited their contention that federal law precludes states from seeking reimbursement through the mechanism of a lien.

### B. *Parties' Showings and Ruling*

In seeking to reduce the amount of the lien, appellant contended that *Ahlborn* established a formula for determining the portion of a settlement that represents medical care payments when, as here, the settlement agreement is silent on this matter. Applying the formula that they purported to discern in *Ahlborn*, they argued that respondent's lien could not exceed $623.75.[7] In addition, they submitted declarations from Attorneys John A. Girardi and Delores A. Yarnall, who stated that the January 2004 petition for approval of the proposed settlement, which denied the existence of a Medi-Cal lien, was submitted in good faith and on the best information then available to appellants' counsel. According to Girardi and Yarnall, prior to the settlement, Marguerite McMillian believed that her private insurance had paid Christopher's medical expenses, and Girardi and Yarnall first received notice of Medi-Cal payments from respondent after the settlement was approved on January 23, 2004.

In opposition to appellant's motion to reduce the lien, respondent submitted evidence that the amount due under the lien was $83,837.43, and requested an order directing payment of this sum. According to declarations of Terry Mack, a collection specialist with the Department, respondent first learned about appellants' action for damages in January 2003, when the Los Angeles County Department of Public Health, Children's Medical Services unit forwarded a request for billing information from a photocopying firm that had provided services to Christopher McMillian. Respondent sent a notice of lien to Girardi & Keese in February 2003, and later phoned Girardi & Keese to prompt a response, but none was received. On January 28, 2004, respondent again sent a letter to Girardi & Keese, which answered in April 2004.[8]

Following a hearing, the probate court denied the motion, stating: "This case is distinguishable from *Ahlborn*. . . . Unlike *Ahlborn*, in which the parties stipulated that one-sixth of the settlement amount was attributable to medical expenses, no such stipulation exists in this case. Indeed, counsel for [appellants] did not notify [respondent] as required of the pending settlement

---

[7] In support of this contention, appellants submitted a declaration from their counsel, Peter B. O'Brien, who opined that the total value of Christopher McMillian's claims was $20,000,000. Pointing to the stipulations in *Ahlborn*, O'Brien further opined that the portion of the settlement representing medical payments was properly determined by the amount of the Medi-Cal payments ($111,783.24) multiplied by the ratio of these payments to the total case value (that is, $111,783.24/$20,000,000). As we explain below (see pt. C., *post*), nothing in *Ahlborn* mandates the use of any such formula.

[8] According to Mack, Girardi & Keese returned the form letter requesting information, noting the date of the injury as "February 1, 2001, though the beneficiary did not receive medical benefits until many months later."

so that [respondent] could have established the percentage of the settlement attributable to medical expenses before the settlement was approved. As a result, this court is put in the position, more than two years after the date of the settlement, to try to make a determination of how much [of] the 2.5 million dollar settlement was attributable to medical expenses. [¶] [Appellants have] not established how much of the settlement constitutes reimbursement for medical expenses. [Appellants have] presented no contemporaneous evidence of discussions at the time of settlement on the subject. [Appellants have] also failed to provide [respondent] with the name of [Christopher McMillian's] purported medical carrier which would have allowed [respondent] to attempt to determine the true value of medical expenses in this case. [¶] Given this record, the court is satisfied that $83,837.43 constitutes a fair determination of the amount of reimbursable medical expenses due [to respondent]. The [c]ourt has no discretion to disallow this lien . . . , and therefore orders [Christopher McMillian] to satisfy the Medi-Cal lien in the amount of $83,837.43."

C. *Analysis*

We see no error in these determinations. In view of appellants' failure to give advance notice of the settlement to respondent, as required by statute, the probate court properly concluded that it was authorized to determine the amount of the lien. (*Ahlborn, supra,* 547 U.S. at p. 288.) Moreover, as explained below, the probate court correctly (1) placed the burden of proof on appellants to show that the portion of the settlement representing medical payments was less than $83,837.43, and (2) found they had failed to carry this burden.

Regarding the burden of proof, we have noted that respondent's status as lien claimant is akin to that of a creditor. (*Wright v. Department of Benefit Payments, supra,* 90 Cal.App.3d at pp. 452–453.) In seeking to reduce the amount of the lien, appellants' motion did not dispute that respondent had provided Christopher McMillian with $111,783.24 in Medi-Cal benefits; instead, they contended that *Ahlborn* mandated a further reduction in the amount of the lien. Generally, "[i]n the absence of evidence justifying an alteration in the normal allocation of the burden of proof, the rule in California is that 'a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.' [Citations.]" (*Sander/Moses Productions, Inc. v. NBC Studios, Inc.* (2006) 142 Cal.App.4th 1086, 1095 [48 Cal.Rptr.3d 525].) Thus, when, as here, a debtor asserts that the amount the creditor demands in repayment of a loan exceeds that permitted by law, the assertion is ordinarily regarded as an affirmative defense for which the debtor bears the burden of proof. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960] [usury]; Civ. Code, § 1671, subd. (b) [liquidated damages provisions].)

■ Moreover, the allocation of the burden of proof to appellants is proper under the circumstances of this case in view of their exclusive access to evidence regarding the settlement discussions. As the court explained in *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 35–36 [130 Cal.Rptr.2d 860], the burden of proof is properly imposed on a party that has sole or primary control over dispositive evidence. There, the author of a novel entered into agreements with an entertainment corporation to share the profits from a movie and related merchandise based on the novel. (*Id.* at pp. 27–28.) After the author initiated an action against the corporation for breach of contract, the appellate court concluded that the burden of proof regarding the claim for breach of contract was to be carried by the corporation due to its exclusive control of the "essential" financial records. (*Id.* at pp. 35–36.) Here, there is substantial evidence to support the probate court's finding that appellants denied respondent an opportunity to participate in the settlement. In view of this determination, the probate court properly imposed the burden upon them to show that the portion of the settlement representing medical payments was less than $83,837.43.

■ The probate court also correctly determined that appellants failed to carry their burden. The record contains evidence that the portion of the settlement reflecting medical payments is sufficient to pay the lien: the petition seeking approval of the settlement stated that past medical expenses had exceeded $250,000, and the lien represents approximately one-third of this amount, and less than 4 percent of the total settlement. However, John A. Girardi's and Delores A. Yarnall's declarations supporting appellants' motion are silent about the portion of the settlement reflecting medical payments; the declarations address whether they acted in good faith in failing to give respondent notice of the pending settlement, and other unrelated issues. Appellants' motion argued only that the probate court was obliged to determine the portion of the settlement reflecting medical payments by reference to a formula they discerned in the factual stipulations in *Ahlborn*. Because *Ahlborn* neither considers nor mandates the use of any such formula, the probate court properly rejected their contention. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 243 [45 Cal.Rptr.2d 207, 902 P.2d 225] ["[A]n opinion is not authority for an issue not considered therein."]; see *Espericueta v. Shewry* (2008) 164 Cal.App.4th 615 [79 Cal.Rptr.3d 517] (*Espericueta*) [rejecting contention that *Ahlborn* imposes formula for determining portion of settlement reflecting medical payments].)

On appeal, appellants suggest that statements by Attorney John A. Girardi constitute evidence on the portion of the settlement reflecting medical payments. They point to a letter from Girardi to O'Brien dated December 6,

2005, which Girardi & Keese submitted to the probate court in June 2006, in response to an order directing Girardi & Keese to provide an accounting of the settlement funds. After explaining the distribution of the funds, Girardi remarked: "Whether the medical bills were greater or lesser, the amount of the settlement would not have changed. The injuries were catastrophic but the issue of causation remained a formidable hurdle."

In addition, Girardi appeared at the hearing on appellants' motion to reduce the lien and stated: "[W]ith respect to the amount of the medical bills, that portion of the component which drove the settlement was the least significant. Horrific injuries to the young man. Lifetime medical care of a major degree in the [ten] figures was projected care, and the loss of earnings wasn't [in the] same league, but it was still significant. We know about the 250.[9] In fact—and we also know, too, that the private insurance could not make any recovery, could not make a claim for their reimbursement. So what we're left with is the single least significant component which drove the entire settlement. And it's not 100 grand in reference to the 2.5 or 2.3 [million] for Christopher's benefit because there was a severe compromise because of causation issues. That was the principal concern throughout the course of the litigation."

None of these unsworn statements constitutes evidence. (*Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 843 [251 Cal.Rptr. 530].) Moreover, even if we were to credit them, they suggest only that the funds within the settlement reflecting medical payments were less that $100,000, not that these funds were, in fact, insufficient to pay the $83,837.43 lien asserted by respondent.[10]

---

[9] This remark apparently referred to the medical expenses described as "[i]n excess of $250,000" in the January 2004 petition to approve the settlement.

[10] Citing *Espericueta, supra,* 164 Cal.App.4th 615, appellants' counsel contended in oral argument that because the court's order approving the settlement directed no payments to medical providers or insurers, it necessarily determined that respondent may not recover on its lien. We disagree. In *Espericueta,* the order approving the settlement regarding an injured minor expressly directed payment of a Medi-Cal lien of approximately $240,000. (164 Cal.App.4th at p. 620.) When the minor later challenged the lien under *Ahlborn,* the court concluded that the order approving the settlement constituted an adequate judicial determination that the funds within the settlement reflecting medical expenses were sufficient to pay the Medi-Cal lien. (*Espericueta, supra,* 164 Cal.App.4th at pp. 625–627.) Here, the petition for approval of the settlement stated that Christopher McMillian's medical expenses were "[i]n excess of $250,000," that all the expenses had been paid by private insurance, and that no funds were owed to medical providers; in addition, it asserted that notice to respondent was unnecessary. The order approving the settlement thus directed payment of "0.00" dollars for outstanding medical expenses. Unlike *Espericueta,* nothing in the order is reasonably viewed as a determination regarding the portion of the settlement funds that reflect past medical expenses.

Appellants contend that the probate court denied them due process in ordering them to pay the lien without an evidentiary hearing on the portion of the settlement reflecting medical payments. We disagree. Prior to filing the motion to reduce the lien, appellants asked the probate court for an order directing the payment or settlement of the lien. In asserting the motion, appellants stated: "The State of California must weigh in on the lien and its amount. This [m]otion affords them sufficient [n]otice and [o]pportunity to be heard." In addition, appellants argued that the parties and probate court would have to "determine the mechanism for [the] determination of the lien amount." The probate court ordered respondent to file pleadings responsive to the motion. Appellants thus agreed that the pending lien could be resolved within the context of their motion, upon declarations alone, if that mechanism for resolving the issue was appropriate. (*Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, 483–485 [114 Cal.Rptr. 356] [Code Civ. Proc., § 2009 empowers the trial court to determine motions upon declarations alone].)[11]

■ Appellants neither expressly requested an evidentiary hearing on the portion of the settlement reflecting medical payments nor made an offer of proof establishing the necessity for a hearing on this issue. As the court explained in *Semsch v. Henry Mayo Newhall Memorial Hospital* (1985) 171 Cal.App.3d 162, 167 [216 Cal.Rptr. 913], "[a]n offer of proof must . . . be specific in indicating the purpose of the testimony, the name of the witness and the content of the answer to be elicited." Here, appellants' motion never refers to an evidentiary hearing. At the hearing on the motion, Attorney O'Brien did not ask for an evidentiary hearing on the settlement, and argued only that John A. Girardi, appellants' prior counsel, was privy to the facts regarding the settlement. For the reasons explained above, Girardi's statements at the hearing, viewed as an offer of proof, do not show that he would

---

[11] This procedure comports with section 14124.76, as amended to reflect *Ahlborn*, which provides in subdivision (a): "No settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the director has an interest, shall be deemed final or satisfied without first giving the director notice and a reasonable opportunity to perfect and to satisfy [respondent's] lien. Recovery of [respondent's] lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary. . . . Absent [respondent's] advance agreement *as to what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary, the matter shall be submitted to a court for decision. Either [respondent] or the beneficiary may seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures.* In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to [respondent] should be, the court shall be guided by [*Ahlborn*] and other relevant statutory and case law." (Italics added.)

have testified that the portion of settlement reflecting medical payments was less than $83,837.43. The probate court thus properly concluded that the pending lien should be resolved on the basis of the declarations alone. (Cf. *Semsch v. Henry Mayo Newhall Memorial Hospital, supra*, 171 Cal.App.3d at pp. 166–169 [trial court properly excludes witness's testimony when offer of proof lacks specificity and does not establish that the testimony's probative value outweighs prejudice or delay].)[12]

Appellants contend that federal law bars states from using liens or any other mechanism for obtaining reimbursement for benefits implicating Medicaid funds. In *Ahlborn*, the court remarked in dictum that provisions of the federal "Medicaid" law regulating the imposition of liens (42 U.S.C. § 1396p(a), (b)), if "[r]ead literally and in isolation, . . . would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care," and "forestall any attempt by the State to recover benefits paid, at least from the 'individual.' " (*Ahlborn, supra*, 547 U.S. at p. 284 & fn. 13.) As no party had raised such an argument, the court declined to address it. Thus, the sole support for appellants' contention is their citation to a case which declined to resolve the issue. In the absence of argument to support their contention, it is forfeited. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2 [87 Cal.Rptr.2d 654, 981 P.2d 499]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890 [33 Cal.Rptr.2d 838].)[13] In sum, the probate court properly ordered Christopher McMillian to satisfy the Medi-Cal lien in the amount of $83,837.43.[14]

---

[12] We recognize that O'Brien asked for "a factual inquiry" into the failure of appellants' prior counsel to give respondent notice of the impending settlement, and that Girardi also referred to the possibility of an evidentiary hearing on this issue. As neither O'Brien nor Girardi made an offer of proof regarding the existence of evidence on this issue beyond that contained in the declarations, these remarks do not alter our conclusion.

On a related matter, appellants' opening brief contends they were denied an opportunity to present evidence on (1) whether Medi-Cal paid less than $111,783.24 in benefits, and (2) whether the private insurers should have accepted Medi-Cal payments. However, before the probate court, O'Brien conceded that respondent had paid the benefits it asserted; moreover, when the probate court asked him whether it needed to resolve item (2), he responded, "No." Appellants have therefore forfeited these contentions.

[13] For the first time on appeal, appellants contend in their reply brief that respondent asserted its lien in an untimely manner. Appellants have also forfeited this contention. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350].)

[14] In view of this conclusion, we reject appellants' contention that they are entitled to an attorney fee award under Code of Civil Procedure section 1021.5, which authorizes awards for parties that prevail in an action "which has resulted in the enforcement of an important right affecting the public interest."

## DISPOSITION

The order of the probate court is affirmed. Respondent shall recover its costs on appeal.

Klein, J.,* and Suzukawa, J., concurred.

On September 18, 2008, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied December 10, 2008, S167390.

---

*Presiding Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.