[No. C058592. Third Dist. Nov. 5, 2009.]

RUBEN LOPEZ, a Minor, etc., et al., Plaintiffs and Respondents, v.
DAIMLERCHRYSLER CORPORATION et al., Defendants;
STATE DEPARTMENT OF HEALTH CARE SERVICES, Third Party
Claimant and Appellant.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Julie Weng-Gutierrez, and Niromi L. Wijewantha, Deputy Attorneys General, for Third Party Claimant and Appellant.

Wilcoxen, Callahan, Montgomery & Deacon, Daniel E. Wilcoxen and Martha A. Taylor for Plaintiffs and Respondents.

## OPINION

**RAYE, J.**—At age seven, plaintiff Ruben Lopez suffered permanent brain damage in a rear-end freeway accident. Lopez filed suit against several car manufacturers that produced the car Lopez rode in at the time of the accident. Lopez settled his suit for $2 million.

Between the accident and the subsequent settlement, defendant State Department of Health Care Services (Department) paid for Lopez's medical expenses in the amount of $547,680.08. Pursuant to Welfare and Institutions Code section 14124.76, the trial court reduced the Department's lien for medical expenses paid to $63,216.69. The Department appeals, arguing the court improperly placed the burden on it to establish the portion of the settlement that was allocated to medical expenses and erred in reducing the Department's lien. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 2003, Lopez suffered serious injuries in an automobile accident. Lopez was sitting in the backseat of a Chrysler Sebring coupe when it was struck by a Chevrolet Trailblazer. As a result of the accident Lopez is permanently brain damaged.

The following year, Lopez filed a products liability suit against several car manufacturers (collectively referred to as DaimlerChrysler). DaimlerChrysler alleged comparative fault on Lopez's part stemming from his failure to properly wear his seatbelt. Lopez tentatively settled his suit for $2 million in December 2006, pending approval of a minor's compromise.

From the date of the accident to January 2007, the Medi-Cal program paid $547,680.08 to treat Lopez's injuries. As required by Welfare and Institutions Code section 14124.72, subdivision (d),[1] the Department reduced its lien by 25 percent, representing the Department's share of Lopez's attorney fees and litigation costs. After the reduction, the lien totaled $367,768.47.

Pursuant to the settlement, Lopez filed a petition to approve the compromise of a disputed claim of a minor (minor's compromise) and a motion to expunge and/or reduce the Medi-Cal lien. Lopez notified the Department of the motions.

On April 9, 2007, at a minor's compromise hearing, the trial court approved the settlement of Lopez's personal injury suit. On July 6, 2007, the trial court heard Lopez's motion to expunge and/or reduce the Medi-Cal lien.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Lopez argued the Department's lien ran afoul of *Arkansas Dept. of Health and Human Servs. v. Ahlborn* (2006) 547 U.S. 268 [164 L.Ed.2d 459, 126 S.Ct. 1752] (*Ahlborn*) by attempting to collect more than that portion of the settlement that constituted reimbursement for past medical payments. The Department contended *Ahlborn* did not adopt a universal formula for determining the amount of a Medicaid lien that is recoverable from the settlement of a beneficiary's third party lawsuit.

On July 26, 2007, the trial court denied Lopez's motion, concluding *Ahlborn* did not establish a mandatory formula for reducing a Medi-Cal lien. Effective August 24, 2007, the California Legislature amended section 14124.76, expressly incorporating the *Ahlborn* decision. (Stats. 2007, ch. 188, § 71.)

Following the effective date of the amendment to section 14124.76, Lopez filed a renewed motion and a motion to reconsider under Code of Civil Procedure section 1008, subdivisions (b) and (c). The trial court granted Lopez's motion.

The trial court determined that the recent amendment to section 14124.76 provided an appropriate framework to determine the amount of the outstanding lien. The court directed the parties to attempt to agree to a determination as to what portion of Lopez's settlement represented payment for medical expenses on his behalf. If the parties failed to reach agreement, either party could seek a resolution by filing a motion under section 14124.76.

The parties failed to agree on the medical expense allocation, and Lopez filed a new motion to reduce the lien.[2] In conjunction with his motion, Lopez offered a declaration by Deborah L. Doherty, M.D., director of neurological rehabilitation at Kentfield rehabilitation hospital, who provided an estimate of Lopez's lifetime medical needs and life expectancy. Lopez also provided a life care plan by a certified nurse life care planner that estimated Lopez's future lifetime medical costs, and a letter from a certified public accountant that provided an estimate of Lopez's future loss of earning capacity. The total economic damages were estimated at $11,635,132.82. The Department did not offer any evidence in rebuttal.

The trial court issued a tentative ruling, stating: "No later than January 11, 2008, [the Department] shall file and serve a supplemental brief supporting its

---

[2] Lopez offered the Department $63,216.69 as full satisfaction of the lien. The Department offered to reduce the lien to $350,000.

request the [*sic*] the court determine Plaintiff's settlement attributable to payments for medical expenses to be $350,000 or offering an alternative method by which the Court should determine that amount."

Following further briefing, the trial court ruled: "Section 14124.76(a) limits [the Department's] recovery to the past medicals portion of the settlement, in accordance with the Ahlborn decision. Unlike Ahlborn, however, the parties in the present case have not stipulated to the past medicals portion or to a method by which that amount can be determined. While the Supreme Court recognized in Ahlborn that its ruling could create difficulties in determining the past medicals portion of tort settlements, it noted that such difficulties could be alleviated by state-adopted rules and procedures for allocating settlements where the state's right to recovery is at issue. [Citation.] No such rules have been adopted by California; § 14124.76(a) charges the Court with determining the past medicals portion but provides merely that the Court is to be 'guided' by Ahlborn in determining that amount."

The trial court considered Lopez's contention that the Department is entitled to only $37,767.54 under the formula enunciated in *Ahlborn*. Under Lopez's calculation, the settlement amount is divided by the total value of his case, unreduced by potential comparative fault. The resulting percentage is multiplied by the total lien amount to obtain the past medicals portion. The court noted Lopez presented evidence of economic damages of $11,635,132.82,. but also noted that Lopez failed to support his claim that his case had a total value of $20 million. Lopez calculated the Department was entitled to a lien of $37,767.54.

The trial court found the Department failed to provide any evidence refuting Lopez's evidence of damages or an alternative method for determining the past medicals portion "despite being given several attempts to do so." The court concluded: "Consequently, the Court finds that it is reasonable to apply the formula used in Ahlborn, as requested by Plaintiff."

The court used only the economic damage calculation it found supported by the evidence, damages of $11,635,132.82, disregarding Lopez's unsubstantiated claim that his case had a value of $20 million. The court found the Department entitled to 17 percent of the total lien amount, reduced for its statutory share of litigation and court costs, for a total lien of $63,216.69.[3]

The Department filed a timely notice of appeal.

---

[3] Using only economic damages, the court divided $11,635,132.82 into the total recovery of $2 million. This yielded 17.19 percent; in other words, Lopez would recover only 17.19 percent of the actual value of the case, using economic damages as the value. To calculate the percentage of the recovery for medical expenses, 17.19 percent is multiplied by $547,680.08, the Medi-Cal lien, which equals $94,142.47. Therefore, $94,142.47 is the amount of the

## DISCUSSION

### I.

The Department challenges the trial court's interpretation of *Ahlborn* and section 14124.76, subdivision (a). We review de novo the impact of both case law and statute. (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 674 [64 Cal.Rptr.3d 827]; *Simpson v. Unemployment Ins. Comp. Appeals Bd.* (1986) 187 Cal.App.3d 342, 350 [231 Cal.Rptr. 690].) We also review de novo a trial court's resolution of Medi-Cal reimbursement. (*McMillian v. Stroud* (2008) 166 Cal.App.4th 692, 699 [83 Cal.Rptr.3d 261] (*McMillian*).)

### II.

The United States Congress established a program of medical assistance for impoverished individuals; aged, blind, or disabled individuals; and recipients of aid to families with dependent children. States choosing to participate in the Medicaid program must develop a plan that conforms to federal law. (*Mission Community Hospital v. Kizer* (1993) 13 Cal.App.4th 1683, 1688–1689 [17 Cal.Rptr.2d 303].) California participates in the Medicaid program and has established the California Medical Assistance Program, known as Medi-Cal. Under Medi-Cal, the federal government reimburses the state for at least half the cost of providing health care to beneficiaries. As a Medicaid program, Medi-Cal must conform to federal Medicaid statutes and regulations. (*Id.* at p. 1688.)

■ The Department administers the state's Medi-Cal program in accordance with enacting statutes and regulations. A state Medicaid agency must take all reasonable measures to "ascertain the legal liability of third parties . . . to pay for care and services available under the plan" and to "seek reimbursement for [medical] assistance to the extent of such legal liability." (42 U.S.C. § 1396a(a)(25)(A), (B).) The Department is required to seek reimbursement of funds paid by the Medi-Cal program to medical providers for the care and treatment of injuries inflicted on Medi-Cal beneficiaries by third parties. (§ 14124.71.)

"Under the Medi-Cal program, the state makes payments to health care providers who render medical care and treatment to Medi-Cal beneficiaries.

settlement that represents payment for past medical expenses. The court then reduced that amount under section 14124.72 for a total lien amount of $63,216.69.

[Citation.] When health care services are provided because of an injury for which another person or entity is civilly liable, the Director has the right to recover from such person or entity the reasonable value of the services provided. [Citation.] . . . [¶] . . . [¶] . . . 'No judgment, award, or settlement in any action or claim by a beneficiary to recover damages for injuries, where the director has an interest, shall be satisfied without first giving the director notice and a reasonable opportunity to perfect and satisfy his lien.' ([Former] § 14124.76.)" (*Kizer v. Ortiz* (1990) 219 Cal.App.3d 1055, 1058–1059 [268 Cal.Rptr. 666].)

 When a beneficiary brings an action against a third party tortfeasor, the Department is allowed a first lien of not more than the amount the beneficiary recovers, after deducting the beneficiary's litigation expenses and attorney fees. (§§ 14124.74, 14124.78.) Recovery from Medicaid beneficiaries must be made in accordance with federal Medicaid law, because federal Medicaid law controls. (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 826 [135 Cal.Rptr.2d 1, 69 P.3d 927].)

## III.

Both parties recognize this case centers on the United States Supreme Court decision in *Ahlborn* and the trial court's interpretation of it. In *Ahlborn*, Heidi Ahlborn sustained serious and permanent injuries in a car accident. The Arkansas Department of Health and Human Services (ADHS) paid out $215,645.30 to health care providers on her behalf. (*Ahlborn, supra*, 547 U.S. at pp. 272–273.)

Ahlborn filed suit against third party tortfeasors for causing her injuries, claiming past medical expenses, pain and suffering, loss of future earnings, and future medical care. The case was settled out of court for $550,000, which was not allocated between categories of damages. ADHS did not participate or ask to participate in the settlement negotiations. (*Ahlborn, supra*, 547 U.S. at pp. 273–274.)

ADHS intervened in the suit, asserting a lien against the settlement proceeds for the full amount it paid for Ahlborn's care. The parties stipulated that Ahlborn's case was reasonably valued at $3,040,708.12 and that the settlement of $550,000 amounted to approximately one-sixth of that sum. Ahlborn filed a declaratory relief action in the district court, seeking a

declaration that ADHS's lien violated federal Medicaid laws since its satisfaction would require depletion of compensation for injuries other than past medical expenses. (*Ahlborn, supra*, 547 U.S. at p. 274.)

The district court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned to ADHS her right to any recovery from the third party tortfeasors to the full extent of Medicaid's payments for her benefit. Therefore, the court reasoned, ADHS was entitled to a lien of $215,645.30. (*Ahlborn, supra*, 547 U.S. at p. 274.)

The Eighth Circuit Court of Appeals reversed, ruling ADHS was entitled to only that portion of the judgment that represented payment for medical care. The United States Supreme Court affirmed. (*Ahlborn, supra*, 547 U.S. at p. 275.)

The Supreme Court reviewed federal Medicaid law and determined that ADHS's recovery for benefits could not exceed the portion of the settlement representing payments for medical care. In determining the portion of Ahlborn's settlement attributable to medical expenses, the Court stated: "Here, the tortfeasor has accepted liability for only one-sixth of the recipient's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation for medical expenses. Under the circumstances, the relevant 'liability' extends no further than that amount." (*Ahlborn, supra*, 547 U.S. at pp. 280–281.) The court further found: "The effect of the stipulation is the same as if a trial judge had found that Ahlborn's damages amounted to $3,040,708.12 (of which $215,645.30 were for medical expenses), but because of her contributory negligence, she could only recover one-sixth of those damages." (*Id.* at p. 281, fn. 10.)

Although the court recognized that its interpretation of federal law created a potential for "settlement manipulation," in view of the stipulations in the record it declined to address the issue. (*Ahlborn, supra*, 547 U.S. at p. 288.) However, the court also noted: "Even in the absence of such a postsettlement agreement, . . . the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." (*Ibid.*)

## IV.

Effective August 24, 2007, the California Legislature amended section 14124.76 to incorporate *Ahlborn*. Section 14124.76, subdivision (a) provides, in part: "Recovery of the director's lien from an injured beneficiary's action

or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary."

 Section 14124.76 also requires that all reasonable efforts be made to obtain the director's advance agreement to a determination as to what portion of a settlement represents payment for medical expenses provided on behalf of the beneficiary. Absent an agreement, the allocation issue shall be submitted to a court for decision, and either party may file a motion seeking a judicial determination. In making such a determination, the court shall be guided by *Ahlborn* and other relevant statutory and case law. (§ 14124.76, subd. (a).)

## V.

The Department argues the trial court erred in attempting to apply the *Ahlborn* formula to the facts before it. According to the Department, *Ahlborn* establishes no formula; it simply holds that a state's Medicaid lien recovery is limited to the portion of the settlement allocated to medical expenses. In support, the Department relies on *Espericueta v. Shewry* (2008) 164 Cal.App.4th 615 [79 Cal.Rptr.3d 517] (*Espericueta*) and *McMillian, supra*, 166 Cal.App.4th 692.

In *Espericueta*, the plaintiff, a Medi-Cal beneficiary, petitioned the trial court to approve her $3.6 million settlement with a third party tortfeasor. The plaintiff filed her petition four months after *Ahlborn* but only cited the 25 percent reduction formula in section 14124.72, subdivision (d). The plaintiff's petition stated that utilizing this formula, the Department would receive $239,474.40 of the settlement proceeds to satisfy its lien. The trial court approved the settlement. Six months later, the plaintiff filed a motion to extinguish or strike the Department's lien to the extent it exceeded $32,856. (*Espericueta, supra*, 164 Cal.App.4th at pp. 618–621.) The plaintiff argued that *Ahlborn* required the Department's lien to be reduced by the same percentage that her settlement bore to the overall value of the case. (*Id.* at pp. 620–621.)

The appellate court disagreed. The court noted *Ahlborn* had been decided four months before the petition to approve the minor's compromise was filed and decided by the trial court. The plaintiff waited six months before attempting to undo the settlement, at which time she for the first time contended the value of her claim was over $26 million. The court stated: "[W]e are at a loss to understand how a court can make an accurate liability analysis and fairly determine if a settlement is reasonable when the petitioner withholds evidence that a minor's case may be worth more than eight times

the proposed settlement amount and when the court is not informed that the petitioner believes the lien amount should be reduced by more than $200,000." (*Espericueta, supra,* 164 Cal.App.4th at p. 627.)

Given the facts before it, the *Espericueta* court found *Ahlborn* inapplicable. The court concluded: "Nothing in *Ahlborn* requires the trial court to reevaluate its prior judicial allocation of the medical expenses portion of the minor's settlement." (*Espericueta, supra,* 164 Cal.App.4th at p. 627.) In effect, the societal interest in the finality of decisions and the importance of full disclosure by litigants of all relevant information at the time the trial court renders its decision led to the court's determination that *Ahlborn* did not apply.

In *McMillian,* a medical malpractice action was brought on behalf of the plaintiff, a child who contracted meningitis and became totally disabled. (*McMillian, supra,* 166 Cal.App.4th at p. 695.) By chance, a collection specialist with the Department discovered the action had been brought. The Department sent a notice of lien to the law firm acting on behalf of the plaintiff. The Department received no response, despite several inquiries. (*Id.* at p. 700.)

The plaintiff filed for approval of a settlement in excess of $2.3 million, no amount of which was allocated to past medical expenses. The petition stated all medical bills had been paid by private insurance, obviating the need to notify the Department under section 14124.73. The court approved the settlement, noting there were no liens since private insurance covered medical expenses. (*McMillian, supra,* 166 Cal.App.4th at p. 696.)

Almost two years later, the plaintiff, now represented by a new law firm, filed a petition to establish a litigation special needs trust and to modify the trust created when the plaintiff was injured. The petition stated "the instrument creating the special needs trust failed to address an existing Medi-Cal lien, and requested an order approving settlement or payment of the lien." (*McMillian, supra,* 166 Cal.App.4th at p. 696.) In support of the petition, the plaintiff's grandmother submitted a declaration stating the money owed to Medi-Cal had not been determined, but she had been informed by counsel that it was approximately $105,429.54. The petition requested approval of payment of the Medi-Cal lien. (*Ibid.*)

Subsequently, the Supreme Court issued its opinion in *Ahlborn.* Two days later, the plaintiff filed a motion to reduce the Medi-Cal lien to $623.75, citing *Ahlborn.* The Department opposed the motion, claiming a lien of $111,783.24, reduced by 25 percent under section 14124.72 to $83,837.43. The probate court found the Department entitled to a lien of $83,837.43.

(*McMillian, supra,* 166 Cal.App.4th at pp. 696–697.) The probate court found *Ahlborn* distinguishable: " 'Unlike *Ahlborn,* in which the parties stipulated that one-sixth of the settlement amount was attributable to medical expenses, no such stipulation exists in this case. Indeed, counsel for [appellants] did not notify [respondent] as required of the pending settlement so that [respondent] could have established the percentage of the settlement attributable to medical expenses before the settlement was approved.' " (*Id.* at pp. 700–701.) This failure put the court in the position of having to determine two years after the fact how much of the $2.5 million was attributable to medical expenses. (*Id.* at p. 701.)

The appellate court affirmed. The court found, in view of the plaintiff's failure to give advance notice of the settlement to the Department as required by statute, that the probate court properly concluded it was authorized to determine the amount of the lien. (*McMillian, supra,* 166 Cal.App.4th at p. 701.) The court also validated (1) the probate court's placing on the plaintiff the burden of showing the proportion of the settlement representing medical payments was less than $83,837.43, and (2) the probate court's determination that the plaintiff had failed to meet this burden. (*Ibid.*)

In discussing the plaintiff's failure to carry his burden, the court noted the declarations supporting the plaintiff's motion were silent as to the portion of the settlement reflecting medical payments: "Appellants' motion argued only that the probate court was obliged to determine the portion of the settlement reflecting medical payments by reference to a formula they discerned in the factual stipulations in *Ahlborn.* Because *Ahlborn* neither considers nor mandates the use of any such formula, the probate court properly rejected their contention." (*McMillian, supra,* 166 Cal.App.4th at p. 702.)

In the present case, the Department seizes upon this language to declare that "there is no '*Ahlborn* formula' " and to challenge the trial court's effort to allocate the medical expense portion of the settlement. However, the court in *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744 [87 Cal.Rptr.3d 174] (*Bolanos*) addressed a similar contention and found it wanting.

In *Bolanos,* the plaintiff, a four-year-old child, suffered an irreversible coma resulting from alleged medical malpractice, requiring life support and nursing care for the rest of her life. The plaintiff brought a medical negligence action, and the parties agreed to settle the case for $1.5 million. The plaintiff estimated the total value of the case at between $6 million and $11.4

million. The Department asserted a lien for $546,651. (*Bolanos, supra,* 169 Cal.App.4th at pp. 748–749, 756.)[4]

The plaintiff brought a motion for a court determination under section 14124.76, subdivision (a). In opposing the motion, the Department cited *Ahlborn* but argued the total amount of the plaintiff's damages was not relevant and the entire $1.5 million settlement was subject to the lien. The trial court agreed and denied the plaintiff's motion. (*Bolanos, supra,* 169 Cal.App.4th at p. 750.)

The appellate court entertained the plaintiff's petition for writ of mandate. The Department cited *Espericueta* and *McMillian.* (*Bolanos, supra,* 169 Cal.App.4th at p. 751.) The court determined: "[T]he aforesaid cases are distinguishable because they involve attempts to modify final orders approving settlements; in both instances, these belated attempts were based on *Ahlborn.*" (*Id.* at p. 758.) After considering the facts of both cases, the court concluded: "*McMillian* is identical to *Espericueta* to the extent that both cases involve final decisions approving settlements *and* belated attempts to undo those decisions. Thus, both *Espericueta* and *McMillian* stand for the proposition that settlements that have received the court's final approval cannot be undone on the mere mention of *Ahlborn.* A contrary rule would produce nothing but chaos." (*Id.* at p. 760.)

As to whether *Ahlborn* set forth a formula to calculate medical expenses, the court stated: "We agree [with *McMillian*] that *Ahlborn* itself does not require the application of the precise formula used in that case, although we do not think this approach, which has the Supreme Court's approval, should be abandoned lightly. We do not agree, however, that *Ahlborn* did not 'consider' the formula—its decision in the case was based on the results of the formula—nor do we agree that *Ahlborn* is of no consequence when it comes to a settlement that has not been allocated between past medical expenses and other damages." (*Bolanos, supra,* 169 Cal.App.4th at p. 761.)

The *Bolanos* court carefully considered both *Ahlborn* and section 14124.76 for guidance on how to allocate medical and nonmedical damages in an otherwise unallocated settlement. The court stated: "We have already set forth how the parties went about this task in *Ahlborn*; the ratio of the settlement to the total claim . . . . [¶] In cases where the injuries have run, for the most part, their economic course by the time the settlement is reached, the approach followed in *Ahlborn* produces a workable approximation." (*Bolanos, supra,* 169 Cal.App.4th at pp. 753–754.) The court also observed: "Certainly,

---

[4] The Department's lien was originally $746,017 but was reduced by 25 percent pursuant to section 14124.72, subdivision (d) for attorney fees and cost of litigation. (*Bolanos, supra,* 169 Cal.App.4th at pp. 748–749.)

one cannot take lightly the fact that the Supreme Court, expounding federal law governing a federal program, concluded that the formula devised by the parties in *Ahlborn* produced a reliable result. This is all the more true in our state, as the Legislature expressly directs the parties and the court to apply *Ahlborn* to determine what *portion* of a settlement represents payments for medical expenses. [Citation.]" (*Id.* at p. 755.)

However, the court cautioned: "This is not to say that the *Ahlborn* formula is the only one to be followed; there is nothing in that decision that compels this. What matters is that past medical expenses are distinguished in the settlement from other damages on the basis of a rational approach; it may be that parties can reach an agreement without recourse to the *Ahlborn* formula. In fact, subdivision (a) of section 14124.76 urges the parties to do so." (*Bolanos, supra,* 169 Cal.App.4th at p. 754.) The court remanded the case back to the trial court to determine the total amount of the claim based upon expert testimony and to determine the amount recoverable by the Department. (*Id.* at pp. 758, 761–762.)

## VI.

In the present case, the court proceeded precisely as the court in *Bolanos* suggested. The court requested the parties to attempt to reach an agreement regarding what portion of Lopez's $2 million settlement represented medical expenses in order to determine the Department's lien. If the parties failed to agree, the court ordered that either party could seek resolution pursuant to section 14124.76.

The court, in requesting the parties to negotiate, recognized that the Department might need to conduct discovery in order to evaluate the lien. The court stated that if discovery was necessary, it ought to be accomplished informally. Lopez's counsel offered to supply the Department with interviews with Lopez and medical information to aid the Department in determining the value of the lien.

After negotiations failed to yield a result, Lopez filed a motion to have the court determine the issue. In conjunction with the motion, Lopez offered declarations by a certified public accountant, a physician, and a certified nurse life care planner to prove the economic value of his case. Lopez's economic damages were valued at $11,635,132.82.

In its opposition, the Department renewed its request for a lien of $350,000 for payment of Lopez's medical expenses. The Department offered no explanation for its valuation. In response, the trial court requested that the Department file a supplemental brief "supporting its request the [*sic*] the

court determine Plaintiff's settlement attributable to payments for medical expenses to be $350,000 or offering an alternative method by which the Court should determine that amount." The Department failed to comply.

The Department argues the court abused its discretion in requesting the Department to explain why the "purported" *Ahlborn* formula should not be applied to calculate reimbursement of the Medi-Cal lien. According to the Department, it could not provide any additional evidence to support its lien because it was never included in the settlement negotiations or proceedings. The Department does not explain why it could not present a challenge to the declarations offered by Lopez, or why it could not offer its own experts to present a valuation of economic damages.

Section 14124.76, subdivision (a) provides, in pertinent part: "No settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the director has an interest, shall be deemed final or satisfied without first giving the director notice and a reasonable opportunity to perfect and to satisfy the director's lien." The Department reads the statute to require that it be informed about settlement proceedings in order to enable it to participate in the settlement process.

■ However, section 14124.76 requires only that the Department be given "notice and a reasonable opportunity to perfect and to satisfy" its lien. The statute does not require or even address the Department's direct participation in settlement negotiations.

Here, Lopez, after tentatively settling his case, notified the Department of the pending petition for minor's compromise and the motion to expunge. The Department appeared at the hearing on the motion to expunge and argued the lien should not be reduced. The Department and Lopez also engaged in unsuccessful settlement negotiations to determine the portion of the $2 million settlement to be allocated for medical damages.

Given the facts before us, we cannot find the trial court erroneously placed the burden of proof on the Department to justify its valuation of the lien. Section 14124.76, subdivision (a) states, in part: "Absent the director's advance agreement as to what portion of a settlement . . . represents payment for medical expenses, or medical care, provided on behalf of the beneficiary, the matter shall be submitted to a court for decision."

■ Lopez filed a motion to resolve the dispute and presented evidence supporting his valuation. The trial court requested the Department to participate by submitting its reasons for valuing the lien. The Department failed to do so. The court acted within the statutory scheme and determined the Department's lien based on the evidence before it. We find no abuse of discretion.

## DISPOSITION

The judgment is affirmed. Lopez shall recover costs on appeal.

Scotland, P. J., and Robie, J., concurred.