[No. B200479. Second Dist., Div. Two. July 1, 2008.]

GUADALUPE ESPERICUETA, a Minor, etc., et al., Plaintiffs and Appellants, v.
SANDRA SHEWRY, as Director, etc., Defendant and Respondent.

COUNSEL

Kussman & Whitehill, Michael H. Whitehill and Steven B. Stevens for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Richard T. Waldow and Gregory M. Cribbs, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**DOI TODD, J.**—Appellant Guadalupe Espericueta, a minor by and through her guardian ad litem, settled with a third party tortfeasor for $3.6 million after she was severely injured in an automobile accident. Respondent Sandra Shewry, Director of the State Department of Health Care Services (the Department),[1] asserted a lien against the settlement proceeds to recover Medi-Cal payments made on behalf of appellant. The trial court granted a petition to approve the compromise of the minor's claim, allocating the amount of medical expenses to be paid to the Department. Six months later, appellant filed a motion to extinguish or strike the Department's lien relying on *Arkansas Dept. of Health and Human Servs. v. Ahlborn* (2006) 547 U.S. 268 [164 L.Ed.2d 459, 126 S.Ct. 1752] (*Ahlborn*), and submitted expert evidence estimating the overall value of her case to be $26 million. Appellant argued below, as she does on appeal, that the Department's lien should be reduced to the same percentage that her settlement bears to the overall value of her case. We disagree. Because there has already been a judicial allocation of the medical expenses portion of the settlement in the order approving the minor's compromise, there is no basis for modifying the order. Accordingly, we affirm the trial court's order denying appellant's motion to extinguish or strike the Department's lien.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Lawsuit*

On May 11, 2003, appellant, who was then 11 years old, suffered severe and permanent injuries, including blindness and the loss of her right leg, as a result of an automobile accident in which she was thrown from a vehicle that rolled over following a tire tread separation. Appellant received medical treatment, the cost of which was paid by Medi-Cal. In December 2004, she

---

[1] Effective July 1, 2007, the State Department of Health Services was renamed the State Department of Health Care Services. (Health & Saf. Code, § 20.)

filed suit against the owner and driver of the vehicle in which she was a passenger and the tire manufacturer seeking general damages, economic damages for medical and related expenses and damages for loss of income and earning capacity.

In June 2005, appellant's attorney wrote to the Department requesting a notice of lien and updated lien amount for Medi-Cal payments made on behalf of appellant.[2] Over the next several months, the Department provided appellant's attorney with periodic updates of the amounts paid for services covered by Medi-Cal. Each update noted that the amount was not yet final.

By letter dated September 7, 2006, appellant's attorney advised the Department that appellant's lawsuit had settled for $3.6 million and asked for a final lien amount. The Department responded on September 11 that Medi-Cal had paid $341,885.87 up to that time, which was not a final amount.

*The Petition to Approve Minor's Compromise*

On September 22, 2006, appellant's mother, as her guardian ad litem, filed a "Petition to Approve Compromise of Disputed Claim or Pending Action or Disposition of Proceeds of Judgment for Minor or Adult Person with a Disability" on Judicial Council form MC-350. The petition stated that appellant had suffered severe internal injuries, amputation of her right leg, and legal blindness; that appellant had received surgery, physical therapy and occupational therapy for her injuries; and that her injuries were permanent, as set forth in attached medical reports by an orthopedist and an ophthalmologist.

Under the section of the petition addressing medical expenses to be paid from the proceeds of the settlement, the petition referred to "Attachment 10," which stated that appellant's medical bills had been paid by Medi-Cal, with the Department claiming a lien of $341,885.87. Attachment 10 further stated that after this amount was reduced by 25 percent for attorney fees and by an additional percentage for litigation costs pursuant to Welfare and Institutions Code section 14124.72, subdivision (d), the total amount calculated to be owed to Medi-Cal was $239,474.40. This amount was also listed on the petition among the items of expense that "have been incurred or paid, are reasonable, resulted from the incident or accident, and should be paid out of claimant's share of the proceeds of the settlement." A 20-page itemized statement of services paid by Medi-Cal was included as an exhibit.

---

[2] It would appear that appellant failed to satisfy the requirements of Welfare and Institutions Code section 14124.73, subdivision (a), which required written notice of her lawsuit to the Department within 30 days of filing the action.

The petition stated that of the total settlement amount of $3.6 million to be paid by Continental General Tire Co., $1,832,810.27 would be paid as upfront cash. Attachment 12 to the petition stated that annuities would provide periodic payments of $5,000 per month for 30 years to begin when appellant turned 18. The petition also sought attorney fees of $900,000, which was 25 percent of the settlement amount, and litigation costs of $180,000.[3]

The petition further stated: "Petitioner has made a careful and diligent inquiry and investigation to ascertain the facts relating to the incident or accident in which the claimant was injured; the responsibility for the incident or accident; and the nature, extent, and seriousness of the claimant's injuries. Petitioner fully understands that if the compromise proposed in this petition is approved by the court and is consummated, the claimant will be forever barred from seeking any further recovery of compensation even though the claimant's injuries may in the future appear to be more serious than they are now thought to be. [¶] Petitioner recommends the compromise . . . for the claimant to the court as being fair, reasonable, and in the best interest of the claimant and requests that the court approve this compromise settlement . . . and make such other and further orders as may be just and reasonable." Petitioner signed the petition under penalty of perjury.

The court granted the petition on September 22, 2006. The order approving the compromise provided that the Medi-Cal lien of $239,474.40 was to be paid directly to the Department out of the settlement proceeds. The order also included instructions that the "net up-front cash (after payment of fees, costs and the Medi-Cal lien) in the amount of $513,396 will be held in Claimant counsel's trust account, as agent for the Trustee" for distribution in accordance with the terms of a settlement trust, to be established to provide for the best interests of appellant. The court further ordered that the trust was to remain subject to the court's continuing jurisdiction, and that accountings were required in accordance with the Probate Code. Above the court's signature in the section marked "Additional orders . . . See Attachment 12," was the handwritten notation that "the court will retain jurisdiction pursuant to [Code of Civil Procedure] § 664.6 regarding the distribution of settlement funds."

*The Motion to Extinguish or Strike the Medi-Cal Lien*

Six months later, on March 20, 2007, appellant filed a motion to extinguish or strike the Department's lien to the extent it exceeded $32,856. Relying on

---

[3] The petition also informed the court that two other plaintiffs had settled for a total amount of $400,000, from which attorney fees totaling $145,000 would be payable to counsel upon approval of the minor's compromise.

*Ahlborn*, appellant argued that the Department's lien should be reduced to the same percentage that her settlement bore to the overall value of her damages. Appellant asserted that the present value of her future medical damages was $26,232,509, and the value of her pain and suffering (general damages) was $2 million. She added these two sums to her past medical costs of $341,885 and calculated the overall value of her damages to be $26,232,509. Appellant calculated that her settlement of $3.6 million represented 13.72 percent of $26,232,480. She then determined that 13.72 percent of the Department's total lien amount equaled $46,911, which she further reduced by the Department's share of attorney fees and litigation costs to arrive at the sum of $32,809.

In support of the asserted value of her overall damages, appellant proffered the following evidence:

(1) A declaration and 11-page "life care analysis" prepared in August 2006 by Jan Roughan, a rehabilitation registered nurse and case management specialist, certified case manager, and certified nurse life care planner, who had reviewed appellant's medical records and concluded that appellant's lifetime future medical expenses would cost $18,692,901;

(2) A declaration and calculation performed in October 2006 by Robert W. Johnson, a forensic economist, that the present value of the future costs of appellant's lifetime medical expenses as set forth in the Roughan life care plan was $23,890,595; and

(3) A declaration by Michael H. Whitehill, appellant's attorney, that based on his more than 20 years of experience in handling catastrophic personal injury cases, the value of appellant's general damages was $2 million.

The Department opposed the motion to extinguish or strike its lien, arguing that *Ahlborn* did not support appellant's claimed reduction and that the Medi-Cal lien had already been properly reduced to reflect attorney fees and litigation costs. The Department objected to the declarations and reports of Jan Roughan and Robert W. Johnson as being irrelevant because they dealt with future expenses, and to the declaration of Attorney Whitehill as inadmissible expert opinion, irrelevant, and lacking in foundation.

Following a hearing, the trial court denied appellant's motion, finding that *Ahlborn* was inapplicable because in *Ahlborn* the parties had stipulated to the overall value of the Medicaid beneficiary's damages, whereas in this case there was no support for the valuation of the case "beyond [appellant's] supposition that the settlement was or should be allocated in the way she proposes." This appeal followed.

## DISCUSSION

### I. *The Parties' Contentions and Standard of Review.*

Appellant contends that the Department's recovery was based on a Medi-Cal lien asserted against the entire proceeds of her third party settlement and therefore runs afoul of the Supreme Court's recent holding in *Ahlborn* that the lien can only attach to the portion of the Medi-Cal beneficiary's settlement that represents medical expenses. Relying on the pro rata formula to which the parties stipulated in *Ahlborn*, appellant claims that the Department's recovery should be reduced to the same percentage that her settlement bears to the overall value of her case, such that any recovery in excess of $32,809 should be stricken. At a minimum, she claims the trial court should be directed to determine the portion of her settlement that reflects past medical expenses.

The Department argues that there should be no further reduction of its lien because there has already been a judicial allocation of the medical expenses portion of appellant's settlement in the trial court's order approving the minor's compromise. It is the Department's position that *Ahlborn* did not mandate the use of any particular formula in making the allocation determination.

The parties seem to agree that the standard of review in this case is de novo. Where, as here, the decisive facts are undisputed and the appeal presents a question of law, we exercise our independent review. (*Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1, 5 [77 Cal.Rptr.2d 581].) Moreover, if the trial court's decision is correct on any legal ground, it must be affirmed even if the trial court's reasoning was incorrect. (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15–16 [68 Cal.Rptr.2d 837].)

### II. *Medi-Cal Reimbursement for Injuries Caused by Third Parties.*

California's Medi-Cal program implements the federal Medicaid program, which funds medical services for elderly and low-income persons. (42 U.S.C. § 1396 et seq.; Welf. & Inst. Code, § 14000.) The Department administers the Medi-Cal program in accordance with federal law. (Welf. & Inst. Code, § 14100.1.) The Department is charged with the duty to seek reimbursement of funds paid by the Medi-Cal program to medical providers for the care and treatment of injuries inflicted on Medi-Cal beneficiaries by third parties. (42 U.S.C. § 1396a(a)(25)(A), (B); Welf. & Inst. Code, § 14124.70 et seq.) The Department can obtain reimbursement by filing an action directly against a third party tortfeasor, by intervening in a Medi-Cal

beneficiary's action against a third party or by filing a lien against a beneficiary's settlement, judgment or award. (Welf. & Inst. Code, §§ 14124.71, 14124.72, 14124.73.) When the Department intervenes in a beneficiary's action, the Department's claim for reimbursement is reduced by 25 percent, representing the Department's share of attorney fees. (Welf. & Inst. Code, § 14124.72, subd. (d).) The claim is further reduced by the Department's share of litigation costs, which is determined by "multiplying by the ratio of the full amount of the reasonable value of benefits so provided to the full amount of the judgment, award, or settlement." (*Ibid.*)

■ Prior to *Ahlborn*, California law specified that the entire amount of a beneficiary's settlement was available to satisfy a Medi-Cal lien. (Welf. & Inst. Code, former § 14124.78.)[4] In May 2006, a unanimous Supreme Court in *Ahlborn* held that a state Medicaid agency cannot "lay claim to more than the portion of [the beneficiary's] settlement that represents medical expenses." (*Ahlborn, supra*, 547 U.S. at p. 280.) Following *Ahlborn*, the California Legislature amended Welfare and Institutions Code sections 14124.76 and 14124.78, effective August 24, 2007. Section 14124.76, subdivision (a) now provides that "[r]ecovery of the director's lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary." Section 14124.76 further provides that all reasonable efforts shall be made to obtain the Department's advance agreement to a determination of the portion of a settlement, judgment or award that represents payment for medical expenses or medical care; in the absence of such advance agreement, the matter is to be submitted to a court for determination. Section 14124.76 further provides that in determining what portion of a settlement, judgment or award represents payment for medical expenses or medical care and what the appropriate reimbursement amount should be, the court is to be guided by *Ahlborn* and other relevant statutory and case law.[5]

---

[4] Welfare and Institutions Code former section 14124.78, in effect at the time of the trial court's denial of appellant's motion to strike, provided that "the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the [Department's] claim for reimbursement of the reasonable value of benefits provided and any lien filed pursuant thereto, but in no event shall the [Department's] claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary." Although appellant cited to former section 14124.78 in her motion to strike, she did so in the context of noting that it was similar to the state law that was struck down in *Ahlborn*, and the Department conceded that it was allowed to seek reimbursement only from that portion of the settlement representing payments for medical care.

[5] Welfare and Institutions Code section 14124.76, subdivision (b) currently provides that if the beneficiary has filed a third party action, the court in which the action was filed shall have jurisdiction over a dispute regarding the amount of the asserted lien. If no action has been

III. *The* Ahlborn *Case.*

Like appellant, 19-year-old Heidi Ahlborn suffered severe and permanent injuries as the result of an automobile accident. She sued two alleged tortfeasors in state court. The Arkansas Department of Human Services (ADHS), which paid for her care under the state's Medicaid plan, intervened in the case to assert a lien on the proceeds of any third party recovery Ahlborn might obtain. (*Ahlborn, supra,* 547 U.S. at p. 274.) The case was settled out of court for $550,000. The parties did not allocate the settlement between categories of damages. (*Ibid.*) ADHS did not participate in the settlement negotiations nor seek to reopen the judgment after the case had been dismissed. ADHS did, however, assert a lien against the settlement proceeds in the amount of $215,645.30—the total cost of payments made by ADHS for Ahlborn's care. (*Ibid.*) Under Arkansas law, when the amount paid by ADHS for the beneficiary's care exceeds the portion of the settlement that represents medical costs, satisfaction of the lien requires payment out of proceeds meant to compensate the recipient for damages distinct from medical costs, such as pain and suffering, lost wages and lost future earnings. (*Id.* at p. 272.)

Following the settlement, Ahlborn filed an action in federal court seeking a declaration that the lien violated the federal Medicaid laws to the extent that its satisfaction would require depletion of compensation for injuries other than past medical expenses. To facilitate the court's resolution of the legal questions, the parties stipulated that Ahlborn's entire claim was reasonably valued at $3,040,708.12, that the settlement amounted to approximately one-sixth of that sum, and that if her construction of federal law was correct, ADHS's recovery should similarly be limited to one-sixth of its asserted lien, or $35,581.47. (*Ahlborn, supra,* 547 U.S. at p. 274.)

Based on its interpretation of federal third party liability provisions, the Supreme Court agreed with Ahlborn that Arkansas law went too far, and held that ADHS could not lay claim to more than the portion of Ahlborn's recovery that represented medical expenses. (*Ahlborn, supra,* 547 U.S. at pp. 279-280.) In reaching its conclusion, the court rejected ADHS's position that title 42 United States Code section 1396a(a)(25)(B)'s requirement that states seek reimbursement for medical assistance to the extent of such legal liability meant that the entirety of a recipient's settlement is fair game. Instead, the court concluded that the statutory language referred to " 'the legal liability of third parties . . . *to pay for care and services available under the plan.' "* (*Ahlborn, supra,* at p. 280.) The court then noted that Ahlborn's

---

filed, the "reimbursement determination motion" may be filed in any superior court where venue would have been proper if an action had been filed, and the motion shall be treated as a special proceeding pursuant to Code of Civil Procedure section 1063. (§ 14124.76, subd. (b).)

tortfeasor had accepted liability for only one-sixth of the overall damages and that ADHS had stipulated that only $35,581.47 of that sum represented compensation for medical expenses. (*Ibid.*) The court stated, "Under the circumstances, the relevant 'liability' extends no further than that amount." (*Id.* at pp. 280–281.) In a footnote, the court added: "The effect of the stipulation is the same as if a trial judge had found that Ahlborn's damages amounted to $3,040,708.12 (of which $215,645.30 were for medical expenses), but because of her contributory negligence, she could only recover one-sixth of those damages." (*Id.* at p. 281, fn. 10.) In response to ADHS's concern that settlements would be manipulated without a rule of full reimbursement, the court stated: "The issue is not, of course, squarely presented here; ADHS has stipulated that only $35,581.47 of Ahlborn's settlement proceeds properly are designated as payments for medical costs. Even in the absence of such a postsettlement agreement, though, the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." (*Id.* at p. 288.)

## IV. *There Is No Basis Here for Striking or Extinguishing the Department's Lien Where There Has Already Been a Judicial Allocation of Medical Expenses.*

Appellant contends that *Ahlborn* requires the Department's lien to be reduced to the same percentage that her settlement bears to the overall value of her case. For the reasons that follow, we disagree.

*Ahlborn* involved an out-of-court settlement in which there was no allocation of the categories of damages. In order to facilitate the federal court's subsequent determination of whether the state agency's lien improperly attached to the entire settlement proceeds, Ahlborn and ADHS stipulated to the amount of the settlement that represented payment of medical expenses. The Supreme Court concluded that the tortfeasor's liability for medical expenses extended no further than this agreed-upon amount for medical expenses, and therefore ADHS could not lay claim to any portion of the settlement beyond that amount.

The settlement before us involved a minor and therefore required court approval. (Code Civ. Proc., § 372; Prob. Code, §§ 2504, 3500, 3600.) A petition for approval of a minor's compromise must be verified and must fully disclose "all information that has any bearing upon the reasonableness of the compromise," including the amount paid and owing for medical care and the "amounts of any negotiated reductions of the charges." (Cal. Rules of Court, rule 7.950 (5).)

The petition for court approval of appellant's compromise, filed and verified by petitioner, specifically allocated the amount of medical expenses as a category of damages. It set forth the Department's lien of $239,474.40, which reflected the statutory deductions for attorney fees and costs. Petitioner stated that the lien amount constituted medical expenses that had been incurred, were reasonable and should be paid to the Department out of appellant's share of the proceeds. Petitioner further represented that she sought approval of a settlement that was "fair, reasonable, and in the best interest of the claimant." The court's order approving the compromise accepted the allocation of medical expenses set forth in the petition and ordered that the Medi-Cal lien of $239,474.40 be paid directly to the Department out of the settlement proceeds.

■ We disagree with appellant's assertion that the trial court made no finding as to what portion of the settlement reflected past medical expenses. The trial court's order granting the petition and approving the minor's compromise constituted a judicial allocation of medical expenses. While it is true, as appellant asserts, that the trial court retained jurisdiction regarding distribution of the settlement funds, the court did not retain jurisdiction to *reallocate* the amount of medical expenses it had already ordered to be paid to the Department. A fair reading of the order makes clear that the jurisdiction retained under Code of Civil Procedure section 664.6 related to periodic future payments and the trust created by the remaining proceeds of the settlement. Indeed, Code of Civil Procedure section 664.6 provides that the court may retain jurisdiction over the parties "to enforce the settlement until performance in full *of the terms of the settlement*." (Italics added.) The terms of the settlement, as presented in the petition for approval of the minor's compromise, included payment of $239,474.40 to the Department for medical costs.

Appellant acknowledges that California Rules of Court, rule 7.950 requires that a petition for court approval of a minor's compromise include a full disclosure of all information bearing upon the reasonableness of the compromise.[6] But she argues that a dispute over a Medi-Cal lien has no bearing on the reasonableness of a minor's compromise so long as the full amount of the claimed lien is disclosed on the petition for approval of the compromise. In other words, the settlement would still be considered reasonable whether or not the court was notified that the petitioner believed the Department was entitled to recover only a portion of its claimed lien. This is so, appellant reasons, because when presented with a petition for approval of a minor's compromise, a trial court is simply being asked to determine whether the settlement is in the best interest of the minor given the injuries involved and

---

[6] Because the parties did not discuss this rule in their original briefs, we invited them to submit additional briefing on this issue, which they have done.

the court's liability analysis. But we are at a loss to understand how a court can make an accurate liability analysis and fairly determine if a settlement is reasonable when the petitioner withholds evidence that a minor's case may be worth more than eight times the proposed settlement amount and when the court is not informed that the petitioner believes the lien amount should be reduced by more than $200,000. Such information would certainly have a bearing on the reasonableness of the compromise.

We note that the decision in *Ahlborn* was issued four months prior to the submission of the minor's compromise petition here. But appellant waited six months after the court approved her compromise to invoke *Ahlborn* and present evidence that the overall value of her case was $26 million. At the time the minor's compromise petition was filed, the life care analysis estimating the future medical costs had been completed, but it was not submitted to the court. Although the proffered calculation of the present value of those medical costs was not made until after the compromise had been approved, it is not clear why this calculation was not made earlier during the two years the lawsuit was pending. Appellant suggests that time was of the essence in filing the petition because her settlement was based on a structured annuity whose cost was dependent on fluctuating interest rates. But this does not explain why all information that had any bearing upon the reasonableness of the compromise was not disclosed in the petition, as required by rule 7.950 of the California Rules of Court.

*Ahlborn* does not change this requirement. Indeed, the Supreme Court's conclusion in *Ahlborn* that a state Medicaid agency can only lay claim to that portion of the settlement that represents payments for medical care has the practical effect of requiring a record that distinguishes between the different categories of damages. The court noted that such a record might be created "by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." (*Ahlborn, supra,* 547 U.S. at p. 288.) Here, the matter was submitted to the trial court for decision in the petition for approval of the minor's compromise. Nothing in *Ahlborn* requires the trial court to reevaluate its prior judicial allocation of the medical expenses portion of the minor's settlement. Accordingly, we find no error in the trial court's rejection of appellant's proffered evidence and denial of the motion to extinguish or strike the Department's lien.

## DISPOSITION

The order denying appellant's motion to extinguish or strike the Department's lien is affirmed. The Department is awarded its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.