Doe v. Vt. Office of Health Access, No. S0355-07 CnC (Toor, J., May 17, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
CHITTENDEN COUNTY

| | |
|---|---|
| JOHN DOE<br>  Plaintiff<br><br> v.<br><br> VERMONT OFFICE OF HEALTH ACCESS<br>  Defendant | SUPERIOR COURT<br>Docket No. S0355-07 CnC |

RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff John Doe[1] sues the State of Vermont, Office of Vermont Health Access (the State). He seeks a declaration that he has satisfied in full any and all rights of the State to recover its lien for the reimbursement of sums paid by the State under the Medicaid program for his medical care as a result of injuries he sustained in an automobile accident and for which he received settlement funds from lawsuits. Plaintiff further alleges that the State has recovered $72,859.70 above the amount of its legally permissible lien, and requests that the State be directed to pay him that amount. The State has filed a counterclaim, seeking, among other things, declaration that the State is entitled to recover $506,810 in satisfaction of a lien it says it acquired in 2006 at the time Plaintiff reached a settlement. The State has moved for summary judgment in that amount. Plaintiff opposes the State's motion, and has filed a cross-motion for summary judgment seeking judgment in his favor in the amount of $72,859.70.

Where, as here, both parties move for summary judgment, both are entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being

---

[1] On October 16, 2007, this court (Katz, J.) granted permission to amend the complaint and change the case name to John Doe v. State.

judged.  Bixler v. Bullard, 172 Vt. 53, 57 (2001) (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).  The court must rule on each party's motion "on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720.  "Both motions must be denied if the court finds that there is a genuine issue of material fact."  Id.

## I.  Factual Background

Both parties' motions rest on the same basically undisputed core of facts, set forth in this background statement.  The parties have each filed statements of fact in support of their motions; responses in opposition; and—due to a continuance granted pursuant to V.R.C.P. 56(f)—the State has filed "additional material facts," to which Plaintiff has filed a response.  The following facts are derived from the parties' statements and from their pleadings.  Disputes are noted where appropriate.

In 1992, at the age of nine, Plaintiff John Doe was injured and paralyzed in an automobile accident, when the family car in which he was a back seat passenger left the traveled portion of the New York State Thruway and went down an embankment.  The accident occurred on a portion of the Thruway that was designed to have guide rails to prevent cars from going down the embankment in the event that they veered off the traveled portion of the highway.  The New York State Thruway Authority (NYSTA) had contracted for that guide rail to be installed, but the guide rails were never installed on the portion of the road where the accident occurred.

Plaintiff had medical needs as a result of his injuries.  On or about November 17, 1994, Plaintiff's mother formally applied for Medicaid coverage for Plaintiff, and signed an agreement with the State.  The State says that under the agreement, Plaintiff's mother

2

agreed to assign to the State, through subrogation, Plaintiff's rights to recover against liable third parties. Plaintiff says this right of subrogation was only a limited right. Plaintiff qualified for and began receiving Medicaid benefits from the State to assist in paying for the medical care he required. The State has paid some but not all of John Doe's medical bills for items and services related to the injuries he sustained.

As a result of the injuries he sustained in the 1992 accident, Plaintiff brought suit in two New York state courts. He brought suit in New York Supreme Court against various alleged third-party tortfeasors, not including NYSTA. He also brought suit in the New York Court of Claims against NYSTA. On or about January 29, 2001, the State informed Plaintiff that it had a legal claim against any award, judgment, or settlement stemming from the 1992 accident. The State said that it would use the methodology in 42 C.F.R. § 411.37(c) to determine the net amount of its lien.

On or about July 3, 2001, Plaintiff's suit against third parties in the New York Supreme Court settled for $8,750,000 (the 2001 settlement). As of that date, the State had incurred approximately $894,893.11 in medical expenses on Plaintiff's behalf. Plaintiff and the State then exchanged a series of communications regarding Plaintiff's obligation to reimburse the State. On or about July 11, 2001, Plaintiff offered to settle the State's lien on the 2001 settlement for $500,000. On or about July 19, 2001, the State rejected Plaintiff's offer to settle the lien for $500,000. The State had calculated—using the methodology in 42 C.F.R. § 411.37(c)—that the amount of its adjusted or net lien with respect to the 2001 settlement was $572,699.59.

On or about August 2, 2001, counsel for Plaintiff wrote to counsel for the State, acknowledging the State's July 19 letter, and noting that "[i]t is again disappointing that the State refuses to make any compromise whatsoever . . . .". Ex. 9 to State's Mot. for

Summ. J. at 1 (filed July 17, 2008). Using "final figures for expenses in connection with the litigation to date" ($286,273.98), and incorporating the fact that counsel for Plaintiff would not be receiving an attorney's fee for the first $500,000 of the settlement proceeds, Plaintiff used the "Medicaid TPL Worksheet" to calculate that the State's net lien was $594,209.03. Id.[2] The letter concluded as follows: "If this calculation is acceptable, please provide me with written confirmation that the state will accept that amount from the total settlement proceeds, and will not seek further sums from the settling defendants . . . or their insurers." Id. at 2.

On or about August 9, 2001, counsel for the State wrote to Plaintiff, stating: "At this time my client agrees that the sum due to the State of Vermont for Medicaid reimbursements is $594,209.03." Ex. 11 to State's Mot. for Summ. J. at 1 (filed July 17, 2008). The letter continued:

> Since the $594,209.03 was based on Medicaid claims paid out on behalf of [Plaintiff] as of June 22, 2001 and since the Department continues to pay out claims, it will seek reimbursement from defendants other than [the defendants in the New York Supreme Court action], to the extent that [Plaintiff] prevails in his actions against the remaining defendants, [NYSTA] and the San Juan Construction and Sales Company.

Id.

On or about October 4, 2001, Plaintiff paid the State $594,209.03 from the proceeds of the 2001 settlement. By a letter dated October 12, 2001, the State acknowledged receipt of Plaintiff's payment of $594,209.03 and stated that the payment satisfied the State's liens against certain defendants (presumably the defendants in the

---

[2] Plaintiff's calculation resulted in a figure that was higher than $572,699.59 primarily because the State's calculation yielding the $572,699.59 figure assumed attorney's fees were one-third of the total $8.75 million settlement. Incorporating into Plaintiff's calculation the fact that counsel for Plaintiff would not be receiving an attorney's fee for the first $500,000 of the settlement proceeds results in lower "procurement costs" and ultimately a larger recovery for the State.

4

New York Supreme Court action), but not others (presumably NYSTA). Plaintiff continued to receive Medicaid benefits after the 2001 settlement.

Plaintiff's suit against NYSTA went to trial on the merits before the New York Court of Claims. After trial, the court issued a decision dated September 20, 2004. The court concluded that NYSTA was negligent, and that its negligence was a proximate cause of Plaintiff's injuries. Ex. 12 to State's Mot. for Summ. J. at 3 (filed July 17, 2008). The Court of Claims concluded that Plaintiff's damages were as follows:

| | |
|---|---|
| Past pain and suffering | $1,000,000.00 |
| Past medical and care | $2,903,636.00 |
| Total past damages: | $3,903,636.00 |
| Future pain and suffering | $4,000,000.00 |
| Future medical and care | $33,831,103.00 |
| Future loss of earnings | $621,283.00 |
| Total future damages | $38,452,386.00 |
| Total award to [Plaintiff] | $42,356,022.00 |

Id. at 58–59. The court noted that "[s]ince the amount of future damages awarded to [Plaintiff] exceeds $250,000.00, a structured judgment is required." Id. at 59. The court ordered that "judgment will be held in abeyance pending a hearing pursuant to CPLR Article 50-B at which time the offset of the $8,000,000.00 previously received in settlement in Supreme Court will be applied." Id. at 59–60. On or about October 19, 2005, the New York Court of Claims issued a "50-B judgment" which provided for annuitization of the damages and annual increases in payments to address inflation. The judgment allocated the sum of $2,903,636 for all of Plaintiff's past medical expenses from the date of injury forward to the date of trial.

On or about July 7, 2006, while NYSTA's appeal was pending, Plaintiff reached a settlement with NYSTA in the amount of $12,000,000 (the 2006 settlement).[3] On or about May 10, 2007, the parties entered a "Stipulation of Final Settlement" for that amount.[4] Between approximately July 3, 2001, when the first case was settled, and July 7, 2006, when the second case was settled, the State paid approximately $771,111 in medical expenses for care extended to Plaintiff. The State claims a lien on the 2006 settlement in the amount of $506,810, reflecting the $771,111 minus the State's share of litigation expenses.[5] It does not appear that either the 2001 settlement or the 2006 settlement allocated—as had the Court of Claims—what portions of the total damages were for past medical care.

## II. The Medicaid Program and the State's Right to Reimbursement

To understand the dispute between the parties, it is necessary to briefly summarize the legal mechanisms governing Medicaid payments made by states on behalf of individuals who qualify for those payments, and the states' right to be reimbursed for those payments when the individual recovers against third parties. The Medicaid program "provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs . . . ." Ark. Dep't of Health and Human

---

[3] The parties' statements of fact do not mention the appeal from the Court of Claims' judgment, but both parties have acknowledged in their memoranda that an appeal was pending. See Pl.'s Opp'n at 5 (filed Oct. 23, 2008); Def.'s Reply at 2 (filed May 22, 2009).

[4] The court is not certain why, if the parties to the Court of Claims action settled in July 2006, they did not enter into the stipulation until May 2007. The parties to this case do not dispute those dates, however, and the court takes them as true for present purposes.

[5] The parties do not quite agree on how to perform the calculation of the State's share of litigation expenses, but their basic methodology appears to be the same. Plaintiff says the State's share is 35.7% of $711,000: $253,827. Pl.'s Reply at 9 (filed Aug. 12, 2009). The State says its share is $264,301 (or about 37.17% of $771,111.37). State's Reply at 28 (filed May 22, 2009). Some of the difference comes from the fact that Plaintiff apparently transposed a "1" for the "7" in the ten-thousands place, and also rounded to the nearest thousand. In any case, as is clear from the discussion below, this difference is perhaps the least of the parties' legal or mathematical disputes.

6

Services v. Ahlborn, 547 U.S. 268, 275 (2006). "[T]he Federal Government pays between 50% and 83% of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements . . . ." Id. (footnote omitted).

"One such requirement is that the state agency in charge of Medicaid . . . 'take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan.'" Id. (quoting 42 U.S.C. § 1396a(a)(25)(A)). A state participating in the Medicaid program is obligated to seek reimbursement from liable third parties, and must have laws in effect:

> under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services.

Id. at 276 (quoting 42 U.S.C. § 1396a(a)(25)(H)).

Like every other state, Vermont participates in the Medicaid program. See id. at 275 (all states participate); 33 V.S.A. § 1901–1910 (Medicaid). The pertinent statute as it applies to this case[6] reads as follows:

> (a) The agency [of human services] shall have a lien against a third party, to the extent of the amount paid by the agency, on any recovery for that claim, whether by judgment, compromise or settlement, whenever:
> (1) the agency pays medical expenses for or on behalf of a recipient who has been injured or has suffered an illness or disease as a result of negligence; and
> (2) the person asserts a claim against a third party for damages resulting from the injury, illness or disease.

---

[6] After this suit was filed in 2007, § 1910 was amended by 2007, No. 192 (Adj. Sess.), § 6.014. Because the act did not specify a different effective date for § 6.014, that section became effective on July 1, 2008—after this case began. 1 V.S.A. § 212. Thus the amendments to 33 V.S.A. § 1910 do not affect this case. 1 V.S.A. § 213. Subsequent citations to § 1910 are to its provisions before the 2008 amendments.

33 V.S.A. § 1910(a).[7]  Section 1910 further provides that "[w]henever the agency recovers under the lien and that recovery is the result of an action initiated by a recipient, the attorney for the recipient may withhold the agency's pro rata share of reasonably necessary costs and expenses incurred in asserting the claim" and that "[t]he attorney for the recipient may negotiate an attorney fee with the agency." Id. § 1910(i), (j).  The final two provisions of § 1910 are as follows:

> (k) In cases in which the agency's lien equals or exceeds the amount of judgment or settlement, the agency shall reduce its claim by recognizing reasonable attorney fees and other reasonable costs of procurement of settlement.  Additionally, the agency shall compromise its claim taking into consideration the nonmedical claims of the recipient.

> (l) In cases in which the court has determined the amount of recovery allocated for past medical expenses, the agency's lien shall be limited to that amount.

## III.  Discussion

The parties agree that, under Ahlborn, the State is entitled only to recover from amounts Plaintiff has recovered that are attributable to his past medical expenses.  Their views diverge, however, in several respects.  First, they disagree over whether the court should consider the 2001 settlement in calculating the past medicals.  Second, they disagree over whether the court can determine the allocation from the record before it, or must hold a hearing to take evidence to determine the allocation.  Third, they disagree over the formula the court should use in doing its calculations.

Here, there are two settlements with two sets of defendants in the underlying tort actions—one reached before Ahlborn was decided and one after—neither of which allocate or break out what portion of the total settlement amount represents medical

---

[7] Plaintiff does not argue that the Office of Vermont Health Access may not assert the agency's lien, and the court does not conclude otherwise.

expenses and what portion represents other damages like pain and suffering or lost wages. Unlike Ahlborn, the parties in this case have not stipulated what portion of either settlement constitutes reimbursement for medical expenses. However, the New York Court of Claims issued an opinion prior to the second settlement which broke out Plaintiff's damages in detail. The court considers these circumstances below, addressing the three disagreements identified above in the process.

### A. The 2001 Settlement

According to the State, Plaintiff cannot "reopen" his 2001 payment of $594,209.03. That payment, says the State, settled its lien on the 2001 settlement, and plays no role in this case.

According to Plaintiff, the State's recovery in 2001 reached beyond his medical expenses in violation of Ahlborn. Basically, Plaintiff would treat both the 2001 and 2006 settlements together for the purposes of his calculation—summing the Medicaid payments, settlements, and procurement costs—and then use the New York Court of Claims' 2004 opinion to arrive at an allocation for the portion of the sum of both settlements that constitutes reimbursement for medical payments. Under Plaintiff's calculation, the State is entitled to recover a total of $521,349.33, but has already recovered $72,859.70 more than that.[8]

---

[8] Plaintiff details his calculation as follows:

1. Divide the amount awarded for past medical expenses under the 2005 Order, $2,903,636, by the total award, $42,356,022 to determine the percentage of the total award (6.855%) that was for past medical expenses.
2. Apply that percentage to the amount recovered through settlement, $20,750,000 ($8,750,000 (2001) + $12,000,000 (2006)), to determine the amount of the settlement attributable to past medical expenses, or $1,422,469.
3. Determine the percentage of past medical expenses paid for by the State's Medicaid program. The total amount paid by the State is $1,666,604 or 57% of the past medical expenses. (footnote continued on next page)

9

The first issue is whether <u>Ahlborn</u> requires this court to reopen and recompute the value of the State's lien after the 2001 settlement. The court concludes the answer is no. As to that particular lien, Plaintiff and the State reached an agreement analogous to an accord and satisfaction. An accord and satisfaction consists of three elements: "(1) the claim is disputed; (2) the party offered to pay less than the amount allegedly due; and (3) in full settlement of the claim, the other party accepted and retained the lesser amount offered." <u>Roy v. Mugford</u>, 161 Vt. 501, 513 (1994).

Here, judging by the parties' negotiations, there was a dispute over how much Plaintiff should pay the State from the 2001 settlement proceeds. Plaintiff offered to pay the State $594,209.03. Technically, that amount was not less than the amount allegedly due, but equal to the amount due, since the State agreed that that represented the sum due for Medicaid reimbursements. The State accepted the $594,209.03, settling its lien with respect to the New York Supreme Court defendants. In short, in exchange for the State's agreement not to seek further sums from the settling defendants in the New York Supreme Court action, Plaintiff paid the State $594,209.03.

The court concludes this set of facts sufficiently establishes the elements of accord and satisfaction. <u>See</u> <u>Paopao v. Wash. Dep't of Social and Health Services</u>, 185 P.3d 640, 643–44 (Wash. Ct. App. 2008) (parties who settled a claim for reimbursement

---

4. Multiply the percentage of past medical expense paid by the State by the amount of settlement attributable to past medical expenses, 57% x $1,422,469 to determine the portion of recovered past medical expenses attributable to expenses paid by Medicaid, and, consequently, against which the State can lien, or $810,807.33.
5. Determine the State's proportionate share of fees and expenses. Total costs and expenses were $7,401,367 or 35.7% of the total recovery. The State's share is 35.7% of the $810,807.33 against which it can assert its lien or $289,458.
6. The State of Vermont is, therefore, entitled to recover a total of $521,349.33 ($810,807.33 - $289,458), but already recovered $72,859.70 in excess of that amount in 2001.

Pl.'s Opp'n at 16 (filed Oct. 23, 2008).

of medical expenses from the amount plaintiff received from a third-party tortfeasor arrived at an accord and satisfaction). Doran v. Missouri Department of Social Services does not require a contrary result because the plaintiffs in that case did not negotiate with the lienholder, and did not arrive at any agreement. No. 07-CV-04158-NKL, 2008 WL 4151617 at *5 (W.D. Mo. 2008). Doran did not involve the elements of dispute, offer, and acceptance necessary for an accord and satisfaction.

Having arrived at an agreement with the State in 2001, Plaintiff cannot now invoke Ahlborn to retroactively undo that agreement. "Generally, only when a matter is still pending, is case law given retroactive effect." Paopao, 185 P.3d at 644 (citing Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752 (1995)). The matter of the 2001 settlement and lien was closed long before Ahlborn was decided. The rule announced in Ahlborn does not apply to a dispute that was no longer pending by the time Ahlborn was decided in 2006. See id. at 644–45.

### B. The 2006 Settlement

The next issue is how to compute the State's lien on the proceeds of the 2006 settlement, which—like the 2001 settlement—does not allocate damages. Both parties have cited Bolanos v. Superior Court, 87 Cal.Rptr.3d 174 (Cal. Ct. App. 2008). The court agrees with the Bolanos court's observation that "a settlement that does not distinguish between past medical expenses and other damages must be allocated between these two classes of recoveries. Without such an allocation, the principle set forth in Ahlborn, that the state cannot recover for anything other than past medical expenses, cannot be carried into effect." Bolanos, 87 Cal.Rptr.3d at 180; see also Espericuenta v. Shewry, 79 Cal.Rptr.3d 517, 527 (Cal. Ct. App. 2008) ("[T]he Supreme Court's conclusion in Ahlborn that a state Medicaid agency can only lay claim to that portion of

11

the settlement that represents payments for medical care has the practical effect of requiring a record that distinguishes between the different categories of damages."). Thus the court turns to the issues of where to get the necessary allocation, and what to do with it.

1. Whether the Allocation Should Come from a Hearing or Instead from the Court of Claims' Findings

Plaintiff argues the requisite allocation can come from the New York Court of Claims' 2004 opinion. Both Plaintiff's original calculation, Opp'n at 16, and his alternative calculation, Reply at 9 (filed Aug 12, 2009), use the Court of Claims' figures to arrive at an allocation. The State maintains that the Court of Claims' ruling should not be used to establish an allocation, and that instead a hearing is necessary to resolve the allocation issue. State's Reply at 13 (filed May 22, 2009). The State proffers the affidavit of an attorney, Peter Joslin, to support its argument that the proper valuation of the case is actually the settlement amount of $12 million rather than the $42,356,022 awarded by the Court of Claims. Ex. E to State's Supplemental Opp'n, Aff. of Peter B. Joslin at 13 (filed Oct. 29, 2009).

The court recognizes that Plaintiff entered into a "Stipulation of Final Settlement" with NYSTA after the Court of Claims entered its damages ruling, and that Plaintiff recovered $12,000,000 based on that stipulation rather than the $42,356,022.00 in total damages found by the Court of Claims. The State's position is basically that the stipulation washed away all of the findings and allocations made by the Court of Claims, and that what is left is an unallocated settlement of $12,000,000. Although the State concedes that Ahlborn requires an allocation, the State's position is that, because there is no other way to arrive at such an allocation, the court must hold a hearing. See Lugo v.

Beth Israel Med. Ctr., 819 N.Y.S.2d 892, 897–98 (N.Y. Sup. Ct. 2006) ("A court determination is necessary to confirm the full value of the case and the value of the various items of damages, including plaintiff's injuries and how they compare to verdicts awarded in other cases. The parties are also entitled to be heard on the fair allocation of the settlement proceeds.").

The court concludes that, even though Plaintiff ultimately recovered based upon the terms of his settlement, the Court of Claims' ruling on damages can and should be used in this case to arrive at the allocation that Ahlborn requires. By settling without the State's "advance agreement to an allocation," Ahlborn, 547 U.S. at 288, Plaintiff essentially adopted the Court of Claims' allocation proportions. Furthermore, although a hearing might not be an improper way to arrive at an allocation, it makes little sense to duplicate the evidence presented and judicial effort expended in the Court of Claims action. To hold an entirely new hearing at which this court would have to redo the same analysis that was done in the Court of Claims would be a hugely wasteful allocation of both judicial resources and those of the parties. There is no reason for this court to reject the considered findings of a sister court that, as the State acknowledges, rendered its decision after a trial on the merits.

For these reasons, the court concludes that Attorney Joslin's affidavit is not relevant to the task at hand, nor does it raise a genuine issue of material fact. The affidavit challenges the Court of Claims' factual findings on various issues, and seeks to convince this court of different conclusions. This court is, however, unwilling to retry the merits of the case.

To the extent the State contends that Lugo stands for the proposition that an allocation hearing must be held in every case of this type, the court disagrees. In this

13

case, unlike in Lugo, there is a court opinion that specifically allocated past medical expenses as a portion of total damages. Ahlborn does not require a specific method for determining the portion of a settlement that represents recovery of medical expenses. Andrews v. Haygood, 669 S.E.2d 310, 313 (N.C. 2008); see also Lima v. Vouis, 94 Cal.Rptr.3d 183, 197 (Cal. Ct. App. 2009) (noting that trial court must make allocation using a "fair and equitable methodology," and that there may be more than one way to make an appropriate allocation); Bolanos, 87 Cal.Rptr.3d at 181 ("What matters is that past medical expenses are distinguished in the settlement from other damages on the basis of a rational approach . . . ."). The court concludes it is both efficient and proper to utilize the Court of Claims figures to arrive at the allocation Ahlborn requires.

The court finds unpersuasive the State's arguments that the particular circumstances of this case require ignoring the Court of Claims' opinion. First, the State argues that the Court of Claims' finding as to total damages is unreliable because that figure is comprised largely of future damages, which, in turn, is anomalous because NYSTA was precluded from offering its damages experts at trial. See State's Reply at 20 (filed May 22, 2009). Plaintiff and NYSTA settled that case before any opinion was issued on appeal, however, and this court has already concluded that by doing so Plaintiff essentially adopted the Court of Claims' allocation proportions. Second, it is true that this case involves catastrophic injuries to a child. It might be reasonable to conclude that a large factor in the 2006 settlement was the cost of future medical care, and therefore that the assumption of the so-called "Ahlborn formula"—that on average, the settlement will be influenced most directly by the amount of past medical expenses—is less likely to apply. See Bolanos, 87 Cal.Rptr.3d at 181–82. Although plausible, this argument is unpersuasive for the same reason articulated above: Plaintiff adopted the Court of

14

Claims' allocation proportions. Furthermore, as discussed below, the court concludes that it need not use the Ahlborn approximation here.

### 2. How to Use the Court of Claims' Findings to Perform the Calculation

Each party has presented two sets of calculations using the Court of Claims figures to arrive at an allocation. First, the State argues that the Court of Claims found past medical expenses to be $2.9 million—more than enough to cover the State's claim of $506,810.[9] State's Reply at 22 (filed May 22, 2009). Alternatively, using a pro rata reduction, the State calculates that the amount of the 2006 settlement attributable to past medical expenses is $822,636, and concludes that that figure also exceeds $506,810. See id. at 26–28. As discussed above, Plaintiff's first calculation sums the 2001 and 2006 settlements and concludes that the State is entitled to recover a total of $521,349.33, but has already recovered $72,859.70 more than that. Alternatively, assuming that the 2001 lien payment could not be reopened, Plaintiff employs a pro rata reduction to conclude that the State can at most recover approximately $130,000. See Pl.'s Reply at 9 (filed Aug 12, 2009).

The court rejects both sets of calculations. The State's first calculation assumes that Plaintiff's recovery for past damages was not reduced at all in the 2006 settlement. The court is unwilling to make that assumption; as stated above, the court concludes that the allocation proportions in the Court of Claims' opinion carry through to the 2006 settlement. The State's second calculation comes closer, but fails to account for the fact

---

[9] Presumably the State arrives at that figure by following the procedure in 42 C.F.R. § 411.37(c), without any kind of pro rata reduction based on the 2004 opinion of the New York Court of Claims, or any other attempt to account for what portion of the 2006 settlement was allocated for medical expenses. The procedure in 42 C.F.R. § 411.37(c) basically sets forth the following formula. The "Medicare recovery amount" is equal to: $P(1 - (C / S))$, where P is the "Medicare payment"; C is the "procurement costs"; and S is the "settlement payment." The State apparently uses the following figures: P = $771,111.37; C = $4,113,038; and S = $12,000,000. The result is a recovery of about $506,810. Although Plaintiff argues that the regulation the State uses applies to Medicare rather than Medicaid, it is consistent with 33 V.S.A. § 1910 in that it reduces the recovery by a proportionate share of costs and fees.

15

that the past medical expenses found by the Court of Claims include the period before July 3, 2001—for which the State has already recovered.[10]

Plaintiff's first calculation assumes it is possible to reconsider the 2001 lien; the court has already determined otherwise. Plaintiff's second calculation suffers from a variety of problems, not least of which is that it begins by assuming that the pool of funds available to satisfy the State's lien is limited to the sum the State paid between July 3, 2001 and July 7, 2006. That assumption is untenable in light of the Ahlborn Court's clear statement that 42 U.S.C. § 1396k(b) requires "that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care." Ahlborn, 547 U.S. at 282. See also In re Matey, 213 P.3d 389, 393 (Idaho 2009). For this reason, the calculation the court performs below does not attempt to account for the fact that the State did not pay all of Plaintiff's medical expenses.

Neither of the two sets of calculations offered by the parties attempts to account for the present value of the Court of Claims' future damages findings. However, in its most recent filings, the State argues that, even if it is proper to rely on the Court of Claims decision, that decision does not establish the value of Plaintiff's claims because it does not calculate the present value of his claims for future economic damages. State's Supplemental Opp'n at 5 (filed Oct. 29, 2009). The State maintains that, to arrive at any proportional percentage for the purposes of an allocation, present value calculations of

---

[10] The State concedes that the Court of Claims awarded damages from the point in time when Plaintiff's injury occurred, but argues that it "did so only in relation to plaintiff's claims against [NYSTA]." Reply at 13 (filed May 22, 2009). To the extent the State argues that the Court of Claims' damages finding was anything less than comprehensive, this court disagrees. The Court of Claims would not have mentioned an offset for the $8 million received in settlement in Supreme Court if it were aggregating anything less than all of Plaintiff's damages. See Ex. 12 to State's Mot. for Summ. J. at 60 (filed July 17, 2008) (noting that the "offset" for $8 million received in Supreme Court would be applied at the "50-B" hearing).

16

future damages components must be performed. Id. at 9. Plaintiff says that present value is irrelevant to the calculation because discounting a damage award to present value is done only to determine the amount in which an annuity contract must be purchased in the present to provide full value of future damages to the successful plaintiff. Pl.'s Reply at 11 (filed Dec. 31, 2009). The State replies that using the Court of Claims figures without computing the present value of future damages would inflate the value of future damages in relation to other damages, and that Plaintiff has failed to cite any authority for the proposition that the undiscounted value of future damages can be used for purposes of allocating a tort settlement. State's Surreply at 10 (filed Jan. 13, 2010).

The court concludes that a calculation relying on proportions gleaned from the Court of Claims' opinion need not account for present value. Initially, the court notes that neither of the calculations the State advocates in its earlier filings includes this additional step. E.g., State's Reply at 27 (filed May 22, 2009) (dividing past medicals by $42,356,022—the total damages found by the Court of Claims without any reduction for present value). The State is changing course and raising new arguments very late in the summary judgment process. This is less than fair, especially in a case as mathematically complex as this one. See Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999) (stating, although in the context of appellate briefing, that "new arguments may not be made in a reply brief").

In any case, the court would still not perform a present value calculation on the Court of Claims' figures. The post-Ahlborn authorities this court has found, and those cited by the parties, uniformly follow the general theme that a trial court must arrive at a fair allocation. However, those authorities do not approach the present value question, and certainly do not state that any allocation derived from a prior court ruling is unfair

17

unless any future economic damages in that ruling are reduced to present value. The court concludes that it is not unfair to derive an allocation by comparing past medicals to the amount of total damages found by the Court of Claims without making a reduction for present value.

In light of all the above, therefore, and instead of using any of the parties' calculations, the court computes the portion of the 2006 settlement allocable to medical expenses between July 3, 2001 and July 7, 2006 as follows.[11] The court begins by noting that, while the Court of Claims did find total past medical expenses were $2,903,636, it did not say what portion of that figure was for medical care during the period of interest here: July 3, 2001 to July 7, 2006. The court concludes it is reasonable to approximate that number by comparing the amount of medical expenses paid by the State from July 3, 2001 to July 7, 2006 ($771,111.37) to the total amount of medical expenses paid by the State through July 7, 2006 ($1,666,004.48). That ratio is approximately 46%. The court therefore concludes that approximately 46% of the $2,903,636 in total past medical expenses was for the period July 3, 2001 to July 7, 2006—about $1,343,950.

Thus the percentage of the total award ($42,356,022) attributable to medical expenses for the period July 3, 2001 to July 7, 2006 is the ratio of $1,343,950 to $42,356,022—about 3.17%. Applying that percentage to the 2006 settlement ($12,000,000), the court concludes that the amount of the 2006 settlement attributable to medical expenses for the period July 3, 2001 to July 7, 2006 is $380,758.14. The State claims a lien on the 2006 settlement proceeds in the amount of $506,810. To the extent that claim exceeds $380,758.14, Ahlborn prevents the State from recovering the excess.

---

[11] Like the "Ahlborn formula," the court's calculation is only an approximation, however the court concludes that this approximation is sufficiently accurate to be workable.

Finally, the court pauses to consider the affirmative defenses Plaintiff asserts in his reply to the State's counterclaim. Plaintiff asserts the defenses of (1) estoppel; (2) unjust enrichment; (3) illegality; and (4) setoff. In the course of the extensive briefing on the present motion, Plaintiff has not specifically discussed any of these defenses. The court concludes that, to the extent Plaintiff still asserts them, each defense is a manifestation of the arguments Plaintiff has already articulated. E.g., estoppel would presumably go to the question of the 2001 settlement, and the remaining theories speak to the proper way to calculate the allocation and ultimately the State's recovery.

Order

The State's motion for summary judgment is granted in part and denied in part. To the extent the State seeks dismissal of Plaintiff's claim for $72,859.70, the State's motion is granted. Plaintiff's cross-motion for summary judgment is denied. To the extent the State seeks summary judgment on its claim for $506,810, the court concludes that the State's recovery is limited to $380,758.14, and the State is accordingly entitled to summary judgment in that amount.

Dated at Burlington this            day of May 2010.


_____
Helen M. Toor
Superior Court Judge